[Civ. No. 32625. First Dist., Div. Four. July 9, 1974.]

HUSTON ABRAMS et al., Plaintiffs and Appellants, v.
CROCKER-CITIZENS NATIONAL BANK, Defendant and Respondent.

🧐

**COUNSEL**

Nathaniel S. Colley for Plaintiffs and Appellants.

Morrison, Foerster, Holloway, Clinton & Clark, James J. Garrett, Charles R. Farrar, Jr., and Alys Briggs for Defendant and Respondent.

**OPINION**

**CHRISTIAN, J.**—Huston and Leola Abrams have appealed from a judgment dismissing a class action which they had brought against respondent

Crocker-Citizens National Bank for alleged improprieties in the handling of funds deposited by borrowers to meet tax and insurance payments on mortgaged realty.

The complaint stated three causes of action: (1) that respondent was a trustee of monies advanced by debtors for payment of real property taxes and insurance and that respondent misused such trust funds; (2) that respondent refused to account for the use of such funds; and (3) that respondent negligently failed to invest the funds. Appellants prayed for an accounting of the income derived from the funds, a declaration of the rights and obligations of the parties, compensatory damages, punitive damages, and attorney's fees. The court granted a summary judgment dismissing all three causes of action. We reverse as to the first two causes of action, holding that there were triable issues of fact.

On September 27, 1963, appellants borrowed the sum of $8,050 from respondent to finance the purchase of a home in Stockton. The loan was to be repaid over a 30-year period, and was secured by a deed of trust on appellants' property. The deed of trust requires appellants to pay, along with their monthly payment of principal and interest, advances to be accumulated by respondent to pay taxes and insurance premiums. The deed of trust requires respondent to "hold such monthly payments in trust to pay such . . . premiums and taxes . . . before the same become delinquent."

The loan was insured by the Federal Housing Administration. The loan was applied for, completed, and entered into on forms (including the deed of trust) which were furnished pursuant to rules published by the Federal Housing Administration. Those rules, embodied in the loan documents, required respondent to collect, manage and disburse sums deposited for tax and insurance premium payments. Neither the application nor the note, nor the deed of trust securing the loan, called for interest on the fund arising out of respondent's holding of deposits for insurance premiums and taxes.

Appellants commenced the repayment of their loan in 1963 and continued their payments thereafter. During the entire period of the loan, respondent has fully performed its obligations to collect and disburse tax and insurance deposits.

Reviewing the summary judgment, we are to determine whether the parties' affidavits or declarations show conclusively that respondent was entitled to judgment. (Code Civ. Proc., §§ 437c, 2015.5; *R. D. Reeder*

*Lathing Co.* v. *Allen* (1967) 66 Cal.2d 373, 376 [57 Cal.Rptr. 841, 425 P.2d 785]; *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)

Appellants' causes of action are based on the theory that respondent holds the monies paid by appellants for property taxes and insurance purposes as a trustee. A voluntary trust is created by acts or words of the trustor which indicate (1) an intention to create a trust and (2) the subject, purpose, and beneficiary of the trust. (Civ. Code, § 2221.) The trustor's manifestions of trust are to be accompanied by the trustee's acts or words expressing (1) his acceptance of the trust, or his acknowledgement, made upon sufficient consideration, of its existence, and (2) the subject, purpose, and beneficiary of the trust. (Civ. Code, § 2222.)

■ The payment of money may create either a debt or a trust, depending upon the intention of the parties. "If the intention is that the money shall be kept or used as a separate fund for the benefit of the payor or a third person, a trust is created. If the intention is that the person receiving the money shall have the unrestricted use thereof, being liable to pay a similar amount whether with or without interest to the payor or a third person, a debt is created." (Rest.2d Trusts, § 12, com. g, p. 37.) ■ The intention of the parties is to be ascertained from their words and conduct in light of the circumstances surrounding the transaction. Circumstances that may be helpful are: (1) the presence or absence of an agreement to pay interest; (2) the amount of money paid; (3) the time to elapse before the payee must perform his agreement; (4) the relative financial positions of the parties; (5) the relationship between the parties; and (6) the custom in similar transactions. (*Ibid.*) The view expressed in the Restatement has been generally adopted in California. (See *Bank of America* v. *Board of Supervisors* (1949) 93 Cal.App.2d 75, 80 [208 P.2d 772].) The status of funds held by banks has been litigated and discussed by commentators. (See 4 Scott on Trusts (2d ed. 1956) § 523, p. 3342.)

■ The factual question presented on appeal is whether the parties intended respondent to be a trustee of the escrow. In a declaration by a bank officer supporting the motion for summary judgment, it was recited that "it is not now, nor . . . has it ever been, the intent or understanding of [respondent] or its officers that [respondent] be restricted to the role of a trustee in its receipt, maintenance and disbursement of such funds, and it is not now, nor has it ever been, the intent or understanding of [respondent] or its officers in connection with such funds, that it would have to account for its use of, or pay interest or other return on, those funds."

Appellants declared in opposition that they never intended the payments made for tax and insurance payments to "become a part of the general assets [of respondent]"; that they never intended the funds to be commingled with other funds of respondent; and that they intended and expected the funds to be held in trust by respondent.[1] The deed of trust states that respondent "shall hold such monthly payments in trust."

There is thus a factual conflict between appellants' declaration that they expected and intended the fund to be held in trust and respondent's declaration that it never intended to create a trust. ■ Money does not necessarily constitute a trust fund because the parties characterize it as a "trust"; the terms employed by the parties are only one of the factors to be considered. (*Anderson* v. *Hagen* (1937) 19 Cal.App.2d 714, 718-719 [66 P.2d 168].) But deeds of trust may appropriately be construed against the drafters if, like insurance policies, they are contracts of adhesion. (*Tahoe National Bank* v. *Phillips* (1971) 4 Cal.3d 11, 20, 30 [92 Cal. Rptr. 704, 480 P.2d 320].) ■ The clause in the trust deed stating that the payments will be held in trust might thus be given considerable weight by the trier of fact as supporting appellants' position.

Respondent argues that in commercial practice an escrow fund is not a trust fund. But no such showing was included in the materials presented to the trial court in support of the motion for summary judgment. In any event, banking custom is only one of many factors to be weighed in deciding the status of the money. (Scott on Trusts, *supra,* p. 3344.)

Assuming the existence of a trust, there is no showing that respondent was obliged to invest the funds for appellants' benefit. (Cf. *Carpenter* v. *Suffolk Franklin Savings Bank* (Mass. 1973) 291 N.E.2d 609, 615.) Nevertheless, appellants may, if their evidence at trial is persuasive, be entitled to an accounting of any gain realized by respondent from the use of trust funds. (Civ. Code, §§ 2229, 2237.)

Respondent points out that numerous legislative bills have failed of enactment[2] which would have required banks to pay interest on real estate

[1]Respondent, citing *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1 [112 Cal.Rptr. 786, 520 P.2d 10], erroneously claims that admissions by appellants in their depositions contradicted their declarations. The significant assertions in the affidavits were not mentioned in the depositions.

[2]Civil Code section 2954 was amended in 1973 to prohibit lenders from requiring the use of impound or trust accounts for the payment of taxes or insurance premiums, except where required by state or federal agencies, in the case of government-guaranteed loans, and in other special instances. This enactment is silent on the question presented in this case, i.e., whether the particular deposit involved here was a trust.

payment accounts of the type in question in this case. However, that history does not resolve the factual issue as to whether a voluntary trust was created by these parties. Similarly, federal housing law neither requires nor prohibits a bank from holding impound funds and being held accountable for their use. (See Comment, *Payment of Interest on Mortgage Escrow Accounts: Judicial and Legislative Developments* (1972) 23 Syracuse L.Rev. 845 at pp. 857-860, fns. 78 and 94.)

Respondent contends that it cannot pay any return on the fund because section 371a, title 12, of the United States Code, prohibits it from paying "directly or indirectly, by any device whatsoever, . . . any interest on any deposit which is payable on demand." (See 12 C.F.R. § 217.1, subd. (a), § 217.2.) But section 371a does not prohibit an accounting for any gain realized by the use of the impound fund; the monies deposited in the fund are not "demand deposits" as the term is used in section 371a. Unlike the usual demand deposit which may be withdrawn at any time by the depositor or upon the happening of some event (see *Lindley* v. *Robillard* (1955) 208 Misc. 532 [144 N.Y.S.2d 33]), a mortgagor may not withdraw money from the fund and the bank knows when payments must be made from the fund. Moreover, section 371a does not protect a bank from liability for money awarded as compensation for its wrongful acts. (*Id.*, p. 537 [144 N.Y.S.2d at p. 37].)

The judgment of dismissal is reversed as to the first two causes of action. As to the third cause of action, alleging negligent failure to invest trust funds, the judgment is affirmed.

Caldecott, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied August 8, 1974, and respondent's petition for a hearing by the Supreme Court was denied September 5, 1974.