[Civ. No. 14500. Fourth Dist., Div. One. Jan. 31, 1977.]

EDWARD E. MARSH, JR., Plaintiff and Appellant, v.
HOME FEDERAL SAVINGS AND LOAN ASSOCIATION,
Defendant and Respondent.

676

## COUNSEL

Marsh, Graves & Bender, Ralph W. Graves and William L. Fischbeck for Plaintiff and Appellant.

Higgs, Fletcher & Mack and Ferdinand Fletcher for Defendant and Respondent.

## OPINION

COLOGNE, J.—Plaintiff Edward E. Marsh, Jr., appeals after the trial court granted summary judgment in favor of defendant Home Federal Savings and Loan Association (Home Federal) on Marsh's class action[1] complaint seeking general and punitive damages, and accounting for use of trust funds, declaratory relief and attorney's fees. As set forth in the parties' agreed statement, the essence of the relief sought in the action is the homeowner borrowers' recovery of earnings which Home Federal derived from its use of moneys paid to it by its borrowers for the payment of real property taxes and insurance premiums, commonly known as "impound" or "reserve" accounts (here called impounds or impound accounts). The case calls for a determination of the legal status of the impounds, i.e., whether Home Federal held in a trust or in a debtor-creditor relationship the impound accounts, established by Home

---

[1]The hearing on the summary judgment motion pertained to only two counts of the complaint. However, Marsh stipulated to the court's granting summary judgment as to two remaining counts in his complaint alleging a conspiracy to either negligently or willfully fail to wisely invest trust funds in breach of fiduciary duty, or to invest the funds at all.

Federal in making secured loans to homeowner borrowers during the period from March 1962 to December 21, 1970 (when the action was commenced) under loan contracts which used a deed of trust similar to the deed of trust of Marsh and which incorporated the same provisions of a fictitious deed of trust previously recorded. These latter described homeowner borrowers are the members of the class Marsh represents in the action. Since 1962 Marsh has paid to Home Federal the monthly installments of real property taxes and insurance premiums as well as principal and interest on his note.

He contends Home Federal holds the impound account moneys in trust and is accountable to him and the members of the class for the use of the moneys. Home Federal contends that upon the payment of the impound account moneys to it, its only obligation to its borrowers was to pay, to the extent of these moneys received, the taxes and insurance premiums when they became due.

Documents bearing on the issue are the loan application and deed of trust executed by Marsh and the previously recorded deed of trust incorporated by reference. The promissory note he executed makes no reference to impounds except to the extent it obligates Marsh to perform the agreements in the deed of trust securing the note.

The deed of trust obligates Marsh to provide and maintain in force at all times, insurance against loss by fire and other hazards, casualties and contingencies as may be required from time-to-time by Home Federal with loss payable to Home Federal, and without Home Federal being responsible for the insurance (Deed of Trust, ¶ 2). Similarly, the deed of trust obligates Marsh to pay at least 10 days before delinquency all taxes, assessments, other governmental charges and special assessments affecting the property. Should Marsh fail to make any payment or do any act as provided or required under the deed of trust, then Home Federal (beneficiary of deed of trust), or the trustee of the deed of trust, "but without obligation so to do and without notice to or demand upon Trustor [Marsh] and without releasing Trustor from any obligation hereof, may: (a) make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, . . ." (Deed of Trust, ¶ 5).

Thus, under these provisions the burden of paying insurance and taxes is entirely on the borrower, with the lender having the authority but no

obligation to pay taxes. The lender, however, did pay all taxes and insurance premiums for which impounds had been paid.

In paragraph 8 of the deed of trust Marsh agrees to pay to Home Federal "monthly advance installments of taxes, assessments, and insurance premiums for the purpose of accumulating a fund (commonly known as a reserve or impound account) to insure payment when due or before delinquency, of any or all of the taxes, assessments, and insurance premiums mentioned . . . ."

The amount of the installments is estimated by Home Federal according to a prescribed method, without responsibility for accuracy, and as to amounts of impound it is further provided: "If the amounts paid to the Beneficiary . . . are insufficient to discharge the obligation of the Trustor to pay such premium or premiums, taxes and assessments as the same become due, Trustor shall pay to Beneficiary upon its demand such additional sums as it may require to discharge Trustor's obligation to pay premium or premiums, taxes and assessments. Should Trustor fail to pay to Beneficiary said additional sums necessary to pay premium or premiums, taxes and assessments, Beneficiary may, at its sole option, pay same and add amounts so paid to the principal indebtedness secured hereby. Said amounts added to principal indebtedness shall bear interest at the rate provided for in note or notes evidencing said principal indebtedness. Beneficiary is not responsible for shortages in said reserve account, nor is Beneficiary responsible for any representations by builders and real estate agents or their representatives as to the amount of the reserve payment."

Paragraph 8 of the deed of trust continues with this provision to which we add emphasis by underscoring: "At the option of Beneficiary, all moneys paid to Beneficiary under the terms of this paragraph may be *held by the Beneficiary in trust in the general funds without interest,* to pay such premium or premiums, taxes and assessments before the same become delinquent, or may be credited directly to interest and principal due under the terms of the note secured hereby, and upon payment by the Beneficiary of taxes, assessments, and insurance premiums, the amount so paid shall be charged to the principal due upon the note secured hereby." (Italics added.)

Paragraph 8 concludes: "Beneficiary may, at its sole option, make an interest payment or a principal and interest payment out of the reserve

account and apply it on the indebtedness secured hereby with or without the consent of the Trustor. Beneficiary may raise said monthly advance installment payment at any time in order to insure payment of insurance, taxes and assessments. At the option of Beneficiary, refunds of prepaid or other interest or return premiums from insurance may be added to said fund and used for any purpose allowed hereunder or under paragraph 9. If the Trustor shall fail to pay the installments provided for in this paragraph, such failure shall constitute a default under this Deed of Trust."

Paragraph 9 provides for disposition of impounds in the event of default on the loan, as follows: "9. In the event of default in the payment of any of the moneys to be paid under the terms of the note secured hereby or this Deed of Trust or in the performance of any of the covenants and obligations of this Deed of Trust, then any funds in the possession of the Beneficiary under the provisions of Paragraph 8, may, at the option of the Beneficiary, be applied to the payment of principal and/or interest or any other amount due upon the obligation secured hereby in lieu of being applied to any of the purposes for which the fund established under paragraph 8 is established."

A late payment charge of 4 cents for each dollar overdue applies to amounts of a payment allocated to impounds (Deed of Trust, ¶ 10).

Marsh's loan application to Home Federal makes the following provision with respect to impounds: "In consideration of the granting of this loan, I agree to deposit monthly with the Association in a fund for Miscellaneous Charges, commonly referred to as an impound or reserve account, an amount sufficient to amortize estimated amount of all charges payable and/or accruing against the property legally described herein, for taxes, street bonds, special assessments, insurance, or other items as may be required for the proper protection of such property, and agree that said Association, at its option, may take from such account at any time any sums of money to my credit and apply them or use the same for the payment of taxes, insurance, repairs, alterations, improvements, and/or any installments of principal and interest, and/or any other sums due or to become due under the terms of the note or deed of trust executed by me. If at any time during the term of this loan the balance of the reserve account is insufficient to pay all of the charges due, I hereby agree to deposit with the Association a sum sufficient to

pay all charges due. In the event I fail to deposit these necessary additional sums to the reserve account when asked to do so by the Association, I authorize the Association to pay the charges for me and add any deficiency to the principal balance of the loan. My failure to meet this responsibility shall be construed as a default under the first lien trust deed. The monthly payments as involved are hereby estimated to be $70.00 per mo., which amount is subject to periodic adjustment."

The declarations and other evidentiary material before the trial court by stipulation of the parties on the motion for summary judgment raise no issue of fact which would require a reversal under Code of Civil Procedure section 437c. The ultimate issue, intent of the parties to the transaction, is a factual one (*Abrams* v. *Crocker-Citizens Nat. Bank,* 41 Cal.App.3d 55, 59 [114 Cal.Rptr. 913]), but must be determined solely from a reading of the documents pertaining to the transaction between Marsh and Home Federal (see 6 Witkin, Cal. Procedure (2d ed. 1971) §§ 257-260, pp. 4248-4251).

The trial court held the parties' intent as defined in the documents created a debtor-creditor relationship, not a trust, and Marsh was not entitled to an accounting of the earnings for Home Federal's use of the impound account moneys.

No serious objection is raised on appeal relative to the propriety of Marsh's representative capacity for the homeowner borrowers from Home Federal.[2] His claim is typical of the claims sought to be asserted and there is no contention he would have interests antagonistic to those of the class (see *McGhee* v. *Bank of America,* 60 Cal.App.3d 442, 450 [131 Cal.Rptr. 482]).

No statutory or case authority in California binds us to a particular result and we approach this case with the aid of the rules set forth in *Abrams* v. *Crocker-Citizens Nat. Bank, supra,* 41 Cal.App.3d 55, at page 59, as follows:

". . . . A voluntary trust is created by acts or words of the trustor which indicate (1) an intention to create a trust and (2) the subject, purpose, and beneficiary of the trust. (Civ. Code, § 2221.) The trustor's manifes-

---

[2]The class action was originally filed against numerous savings and loan associations in California but before summary judgment was determined the class was ordered limited to homeowner borrowers of Home Federal.

tions [*sic*] of trust are to be accompanied by the trustee's acts or words expressing (1) his acceptance of the trust, or his acknowledgement, made upon sufficient consideration, of its existence, and (2) the subject, purpose, and beneficiary of the trust. (Civ. Code, § 2222.)

"The payment of money may create either a debt or a trust, depending upon the intention of the parties. 'If the intention is that the money shall be kept or used as a separate fund for the benefit of the payor or a third person, a trust is created. If the intention is that the person receiving the money shall have the unrestricted use thereof, being liable to pay a similar amount whether with or without interest to the payor or a third person, a debt is created.' (Rest.2d Trusts, § 12, com. g, p. 37.) The intention of the parties is to be ascertained from their words and conduct in light of the circumstances surrounding the transaction. Circumstances that may be helpful are: (1) the presence or absence of an agreement to pay interest; (2) the amount of money paid; (3) the time to elapse before the payee must perform his agreement; (4) the relative financial positions of the parties; (5) the relationship between the parties; and (6) the custom in similar transactions. (*Ibid.*) The view expressed in the Restatement has been generally adopted in California. (See *Bank of America* v. *Board of Supervisors* (1949) 93 Cal.App.2d 75, 80 . . . .) The status of funds held by banks has been litigated and discussed by commentators. (See 4 Scott on Trusts (2d ed. 1956) § 523, p. 3342.)"

In *Abrams* the Court of Appeal found there were issues of fact pertaining to intent to create a trust in the declarations presented for determining the summary judgment motion there under review. Thus, the *Abrams* court reversed the judgment and ordered the trial court to resolve those issues of fact. Here, however, the only evidence of intent the parties offer is to be found within the four corners of the written documents.[3] It then became a pure question of law.

Guidance in determining the ultimate issue here is also found in the following statement from *McGhee* v. *Bank of America, supra,* 60 Cal.App.3d 442, at page 448 (a follow-up case to *Abrams* and two other cases in which issues pertaining to certification of the cases as class actions were decided): "The existence of a trust requires a clear intention to create the trust, although no particular language is necessary to

---

[3]Before the court agreed to receive the issues by way of summary judgment the court made careful inquiry if there was other evidence available which might shed light on the intent of the parties and it was agreed the documents provided the only evidence available.

manifest that intent. (7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, § 21, p. 5384; Rest.2d, Trusts, § 12, com. g; 1 Scott on Trusts (3d ed. 1967) § 12.1, pp. 107-108.) The mere use of the words 'in trust' by the parties is not sufficient alone to create the trust. (*Anderson* v. *Hagen* (1937) 19 Cal.App.2d 714, 719-720 . . . .) '[A]n express trust may arise even though the parties in their own minds did not intend to create a trust. As in the case of the making of a contract, so in the case of a trust, an objective rather than a subjective test is applied. It is the manifestation of intention which controls and not the actual intention where that differs from the manifestation of intention.' 1 Scott on Trusts (3d ed. 1967) § 2.8, p. 44; see, e.g., *Neel* v. *Barnard* (1944) 24 Cal.2d 406, 411-412 . . . .)"

■ Considering the various circumstances set forth in *Abrams,* as quoted above, the absence of an agreement by Home Federal to pay interest, more specifically, the provision Marsh's payment is "without interest," tends to the conclusion Home Federal was acting as a trustee in holding the impounds (see 5 Scott, Trusts (3d ed. 1967) § 530, p. 3685).[4] While the record does not disclose a particular amount, financial statements of Home Federal suggest the impound account constituted a very substantial sum and was carried as a separate item of liability. This suggests it was not intended to be an ordinary debt of Home Federal. The deed of trust itself provides for a holding period of about 13 months before the lender must, on a continuing basis for the term of the loan, perform its agreement to use the funds to pay the taxes and insurance.[5] The lending institution in the ordinary case stands in a superior financial position to that of the individual borrower as it drafts and presents the loan documents for signature by the borrower, holds many options with which to protect its secured interest under those loan documents, and has available to it an array of resources on which to rely for the performance of its obligations and the pursuit of its rights under the loan agreement.

---

[4]"Where the bank undertakes to pay interest on the deposit, it is clearly the intention of the parties that the bank should have the use of the money, and that it becomes a debtor and not a trustee. Interest is paid for the use of money, and the bank would hardly undertake to pay interest unless it were to have the use of the money. There is, however, some authority to the effect that a trust is created in spite of the fact that the bank agrees to pay interest." (5 Scott, Trusts § 530, p. 3685; fns. omitted.)

[5]". . . Such installments shall be equal to the estimated premium or premiums for such insurance and taxes and assessments next due (all as estimated by Beneficiary without responsibility for accuracy of said estimated monthly installments), less all installments already paid therefor, divided by the number of months that are to elapse before one month prior to the date when such premium or premiums and taxes and assessments will become delinquent. . . ." (Deed of Trust, ¶ 8.)

This points to a need for a high standard of care and suggests a fiduciary relationship is due the borrower. So far as we can determine from the record, the relationship of the parties was simply one of lender and borrower before the loan agreement was made. No customary practice in similar transactions is established by the record.

It is worth noting funds held by banks in escrow are ordinarily viewed as deposits for a special purpose imbued with incidents attending trust funds such as preference over creditors on insolvency of the holder, and prohibition of use by the holder bank for its own general purposes (*Bank of America Assn.* v. *California Bk.,* 218 Cal. 261, 274-275 [22 P.2d 704]; *Burket* v. *Bank of Hollywood,* 9 Cal.2d 113, 116 [69 P.2d 421]; 5 Scott on Trusts, § 530, pp. 3680-3684). In the absence of a specific agreement these trust incidents would attend impounds which have essentially the same characteristics as funds held in escrow for the purpose of effecting the transfer of the payment to the obligee taxing agency or insurance company.[6] Here, however, the usual incidents have been modified by agreement.

The manifested intent expressed by the document language "*held* by the Beneficiary *in trust* in the general funds without interest," (italics added), leads to the conclusion the parties intended the money "shall be kept or used as a separate fund for the benefit of the payor or a third person" (Rest.2d Trusts, § 12, p. 37, com. g). (See *Abrams* v. *Crocker-Citizens Nat. Bank, supra,* 41 Cal.App.3d 55, 59.) Home Federal clearly considered the impounds as something other than an ordinary debt where it reported the funds in a separate account and even on the briefest of financial statements separated the impounds from other debts. In their execution of these documents and then making the impound payments under these provisions the borrower-trustors manifested their intent to create a trust complete with subject, purpose and beneficiary (Civ. Code, § 2221). These manifestations were accompanied by the lender-trustee's acts and words expressing its acceptance of the trust and its subject, purpose and beneficiary (Civ. Code, § 2222). Home Federal drafted the documents expressing its trustee status in the establishment and operation of a specially designated account made up of borrowers' money and as the draftsman would suffer an interpretation most strongly

---

[6] "'Escrow' means any transaction wherein one person, *for the purpose of effecting the . . . transfer . . . of* real or *personal property* to another . . . delivers any . . . money . . . or other thing of value to a third person to be *held* by such third person until the happening of a specified event or . . . prescribed condition, when it is then to be delivered by such third person to [an] . . . obligee . . . ." (Fin. Code, § 17003; italics added.)

against it (see Civ. Code, § 1654; *Laux* v. *Freed,* 53 Cal.2d 512, 524 [2 Cal.Rptr. 265, 348 P.2d 873]). Home Federal stated its intent to be a trustee for the benefit of the homeowner borrowers. Home Federal was not a debtor of the homeowner borrowers with unrestricted use of the impounds.

■ Having concluded a trust exists we are now required to determine whether Home Federal breached its duty as trustee by commingling the funds and taking the benefits of its use without paying interest.

■ A court may not fashion a new contract for the parties where the words creating the trust are clear, intelligible and explicit and do not involve an absurdity; the agreement of the parties must govern its own interpretation (*Estate of Wamack,* 137 Cal.App.2d 112, 117 [289 P.2d 871]).

■ Here the agreement provides Home Federal may place the impounds into the general funds. This clearly imparts authority to commingle the funds with the general deposits of patrons of the institution and with any other income it might have. While commingling departs from the usual concept of a trustee's authority, it cannot be deemed unusual or unconscionable especially when dealing with a federally chartered savings and loan association which is closely controlled by federal laws as a mutually structured corporation and whose business contemplates investing the funds of its customers. The interest it agrees to pay varies according to the contract with the customer or depositor but separation of funds of these varying classes is not a standard practice.

■ A trustee has a general duty to invest trust property so that it is productive for the beneficiary (Rest.2d Trusts, § 181) and to account for any gain realized from the use of trust funds (Civ. Code, §§ 2229, 2237; see *Abrams* v. *Crocker-Citizens Nat. Bank, supra,* 41 Cal.App.3d 55, 60). When, however, the parties adopt a provision which does not contravene a principle of public policy and which contains no element of ambiguity, the court has no right, by process of interpretation, to relieve one of them from any disadvantageous terms which he has actually made (Williston on Contracts (3d ed. 1961) § 609). ■ Here the agreement permitted the commingling and specially provided no interest would be payable. Interest is defined as the "*compensation allowed* by law or fixed by the

parties *for the use, or forebearance, or detention of money*" (Civ. Code, § 1915; italics added). In light of this definition encompassing payment for the *use* of money, it follows the parties agreed the lender could place the impound moneys with its general funds and use those moneys without an obligation to pay any compensation for that use. To force the lender to account for and pay Marsh for the earnings from the agreed use of the impounds would be contrary to the express agreement.

Having concluded there is nothing unusual or unconscionable in Home Federal's practice of commingling the impounds with its general funds and this practice was within the reasonable expectations of the parties and was clearly authorized under the terms of the trust deed, it is unnecessary to consider the parties' assertions concerning whether this transaction comes within the doctrine of adhesion contracts (see *Madden* v. *Kaiser Foundation Hospitals,* 17 Cal.3d 699, 710 [131 Cal.Rptr. 882, 550 P.2d 1178]; *Neal* v. *State Farm Ins. Cos.,* 188 Cal.App.2d 690, 695 [10 Cal.Rptr. 781]).

There is out-of-state case authority holding impound accounts can be viewed as held in trust (*Carpenter* v. *Suffolk Franklin Savings Bank* (1973) 362 Mass. 770 [291 N.E.2d 609, 615];[7] *Buchanan* v. *Brentwood Federal Savings & Loan Ass'n* (1974) 457 Pa. 135 [320 A.2d 117]). Other case authorities have found an agency (*Richman* v. *Security Savings & Loan Assn.* (1973) 57 Wis.2d 358 [204 N.W.2d 511]), or answered the issue by viewing the relationship reflected in the document and surrounding facts in an ordinary contractual manner (*Surrey Strathmore Corp.* v. *Dollar Sav. Bk. of N. Y.* (1975) 36 N.Y.2d 173 [366 N.Y.S.2d 107, 325 N.E.2d 527]). None of these cases, however, involved an agreement (deed of trust or mortgage) in the language of the agreement we have before us and we cannot disregard the language the parties chose here.

In *Brooks* v. *Valley National Bank* (1976) 113 Ariz. 169 [548 P.2d 1166], the court was called upon to answer the issue whether the agreement required the lender to hold the funds "in trust." The court held even though the mortgage required the lender to hold the impound account "in trust," the language did not create a trust in light of the bank's

---

[7] In *Carpenter* v. *Suffolk Franklin Savings Bank* (1976) — Mass. — [346 N.E.2d 892], the reviewing court decided the same case on its merits and held there was no express, resulting or constructive trust.

declaration no trust was intended and in the context of no declaration of trust intent by the borrower. The court also considered a custom of financial institutions not to intend a trust relationship in the case of impounds, and a lack of any unjust enrichment since the cost of servicing the impound account exceeded the amount earned if the prevailing interest rate were paid. In a concurring opinion finding there was a trust but no interest or earnings was payable the intent of the parties was determined from the custom of financial institutions in the area which revealed neither interest nor earnings was payable. We are not provided evidence of intent from custom and usage and lack the record to resolve the issue in that manner.

We find nothing in the opinions of our sister states which conflict with the results we have reached.

Nor is there determining or guiding language in the California statutes relating specifically to impounds. The most recent statute is Civil Code section 2954.8, effective January 1, 1977 (Stats. 1976, ch. 25), which requires financial institutions to pay at least 2 percent per annum interest on moneys received in advance for payment of insurance, taxes and assessments on one-to-four-family residences for which secured loans are made after January 1, 1977. Section 2954.8 also prohibits charges for maintaining impound accounts resulting in an interest rate of less than 2 percent. Section 2954.8 does not characterize such moneys even as "impound accounts." Other sections make references to and provisions for establishing, maintaining and reporting on "impound, trust or other type" of described accounts but make no particular provisions bearing on the trust status of these accounts (see Civ. Code, §§ 2943 [report after default]; 2954 [establishing impound account and reporting on it]; 2954.2 [reporting on impound account after 1/1/78]; 2955 [California limitation on holding and any investment of impounds]). Sellers under real property sales contracts, not involved here, are required to hold impounds "in trust for the purpose designated" (Civ. Code, § 2985.4; Stats. 1963, ch. 560). If the latter statute provides any assistance here, it is that it impliedly approves, as not contrary to public policy, the agreement here in issue executed before the effective date of the act and providing for interest-free impound accounts.

Accordingly, we are limited to general contract principles in construing the agreement of the parties. In this light we hold the impounds paid by Marsh to Home Federal are held in trust, but that Marsh and those in

his class authorized Home Federal to place the money in the general fund and use it without having to pay compensation for that use, i.e., without interest.

Judgment affirmed.

Brown (Gerald), P. J., and Ault, J., concurred.

A petition for a rehearing was denied February 14, 1977, and appellant's petition for a hearing by the Supreme Court was denied April 28, 1977. Bird, C. J., was of the opinion that the petition should be granted.