[Civ. No. 17860. Fourth Dist., Div. Two. Apr. 5, 1978.]

MARJORIE A. PETHERBRIDGE, Plaintiff and Appellant, v.
PRUDENTIAL SAVINGS AND LOAN ASSOCIATION,
Defendant and Respondent.

512

## COUNSEL

Byhower & Petherbridge and Richard W. Petherbridge for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, G. Edward Fitzgerald and Martin C. Washton for Defendant and Respondent.

## OPINION

**KAUFMAN, J.**—Plaintiff, Marjorie A. Petherbridge, initiated this suit as a class action against Prudential Savings and Loan Association and 37 other savings and loan associations to recover earnings realized by defendants from use of moneys paid to them as impounds (i.e., monthly payments to cover real property taxes and hazard insurance premiums). A judgment dismissing the action as to all of the defendant savings and loan associations except Prudential, Home and American was affirmed by this court in *Petherbridge* v. *Altadena Fed. Sav. & Loan Assn.*, 37 Cal.App.3d 193 [112 Cal.Rptr. 144]. Thereafter plaintiff voluntarily dismissed the action against Home and American and proceeded solely against Prudential Savings and Loan Association (hereafter defendant). On cross-motions of the parties the court determined the suit could not be properly maintained as a class action and entered its order accordingly. Thereafter the case proceeded to court trial on plaintiff's individual claim. The court determined that plaintiff's impound payments to defendant created a debtor-creditor relationship, not a trust, and that defendant was, therefore, not obliged to account to plaintiff for earnings. Accordingly, judgment was rendered in favor of defendant. Plaintiff purports to appeal both from the judgment and the order of March 3, 1975, determining the suit could not properly be prosecuted as a class action. The order is not appealable (cf. *Vasquez* v. *Superior Court*, 4 Cal.3d 800, 806 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]) but is reviewable on appeal from the judgment.

### Facts

In May 1967 plaintiff and her husband purchased a house from defendant. Defendant had acquired the house together with some 40 others in the area as a result of foreclosure sales. While they remained unsold, these houses were not only not producing income, they were

accruing taxes and maintenance costs. The area was overbuilt, and there were many unsold homes and relatively few buyers. Anxious to dispose of these houses, defendant was offering them for sale with almost no down payment, financing the balance of the purchase price with a "loan to facilitate." The price of the house purchased by the Petherbridges was $23,250. Their down payment was $450. The balance of the purchase price was represented by a promissory note to defendant in the amount of $22,800 secured by a first deed of trust. Annual taxes on the property were then $376, and the amount of the monthly impound payments was initially set at $35.

Plaintiff and her husband executed a deposit receipt and escrow instructions in addition to the promissory note and deed of trust. The language of the written instruments is pertinent to the case and will be set forth at some length in our discussion of the issues. Suffice it to say at this point the documents contained provisions obligating plaintiff and her husband to make impound payments to defendant, and this fact was known and understood by plaintiff and her husband.

The Petherbridges had purchased a home on three previous occasions, this being their fourth. In connection with at least one of the previous purchases, the loan transaction included a provision for payment of impounds substantially similar to that included in the deed of trust here involved. The Petherbridges did not receive interest on the impound payments made in connection with that loan and demanded none. Mr. Petherbridge, who negotiated this transaction with defendant, is an attorney. At the time of the transaction he had been in practice some 17 years. He was generally familiar with real estate transactions and had advised purchasers of real estate in the course of his law practice. Although evidence introduced at trial indicated the loan agreement, including the impound provision, was negotiable as far as defendant was concerned,[1] plaintiff and her husband made no attempt to negotiate with respect to the impound provision, although they did negotiate for certain repairs to the house prior to its transfer.

Since purchasing the house in May 1967, plaintiff and her husband have paid the required impounds monthly as part of a lump sum payment of principal, interest and impounds. Impound payments were

---

[1] There was testimony that defendant would accept other security, such as pledge of a savings account, in lieu of the payment of impounds and that with a greater down payment the impound requirement would be waived.

not designated as such or in any way differentiated from payments of principal or interest. Defendant sent monthly statements of account to the Petherbridges. Principal, interest and impound transactions were itemized separately. The detail on the impound transactions consisted basically of showing the previous month's payment, any disbursements for the payment of taxes or insurance premiums, and the amount of impound payments unexpended.

Consistent with stipulated custom and usage in the savings and loan industry, the amounts collected by defendant from the Petherbridges as impounds were at all times commingled with defendant's general assets and were used for ordinary business purposes, thereby producing income. Defendant did not pay any interest or any other monetary compensation to plaintiff on account of the impound payments, nor has it accounted to plaintiff for any of the income realized from the use thereof. There was no substantial period of time between defendant's receipt of money paid as impounds and its payment of taxes or insurance on account of which the payments were received. The aggregate unexpended balance of impound payments received from all borrowers was carried on the books of defendant under an account representing a claim against its general assets.

Although plaintiff learned in late 1970 defendant was commingling the impound payments, at no time prior to instituting suit did she or her husband ever demand an accounting for earnings or payment of compensation. On the contrary, even after she was fully advised of defendant's handling and use of the impound payments, plaintiff requested defendant to increase the amount of her impound payments to include her hazard insurance premiums.

Three days prior to institution of this action, plaintiff's husband quitclaimed to her his interest in the house purchased from defendant.

The trial court found as facts most of the foregoing. It further both found and concluded that the primary purpose of the impound arrangement was to increase the security of defendant, that the parties did not intend to create a trust and that plaintiff retained no beneficial interest in the impound payments. It further concluded that plaintiff's payment of the required impounds contractually obligated defendant to make necessary tax and insurance payments but that defendant's use of the money paid as impounds was unrestricted.

*Discussion of Contentions and Issues*

A. *Scope of Review*

Both parties recognize that the crucial question confronting the trial court was whether the parties intended to create a trust or a debtor-creditor relationship. (See, e.g., *Abrams* v. *Crocker-Citizens Nat. Bank,* 41 Cal.App.3d 55, 59 [114 Cal.Rptr. 913]; Rest.2d Trusts, § 12, com. *g*, p. 37.) However, the parties do not agree on the evidence the court could and did consider in ascertaining their intent. This problem must be resolved at the outset because it is related to the scope of review.

Plaintiff contends the intention of the parties is to be ascertained exclusively from the provision in the deed of trust relating to the payment of impounds which provides in part that money paid to defendant as impounds shall, at its option, "be held . . . in trust." She asserts that although during trial the court denied her motion to strike testimony of the witnesses regarding their understanding of the trust deed provisions, ultimately the court gave no consideration to extrinsic evidence of the parties' intent. Plaintiff is mistaken on both counts. In its conclusions of law the trial court stated: "Since it is the *objective manifestation of intent* by the parties which controls . . . , no weight has been given to *evidence received concerning the subjective intent of the parties. Such evidence* is deemed stricken from the record." (Italics added.)  ■  It is clear the court disregarded only evidence of subjective intent.[2] It is equally clear both from its statement and other findings and conclusions that the court fully considered all evidence of the parties' objective manifestations of intent, including several provisions of the deed of trust, provisions in the deposit receipt and escrow instructions, the circumstances surrounding the transaction and the subsequent conduct of the parties. Its consideration of this evidence was entirely proper.  ■  The use by the parties of the word "trust" or the words "in trust" does not necessarily manifest an intent to create a trust relationship. (*Abrams* v. *Crocker-Citizens Nat. Bank, supra,* 41 Cal.App.3d at p. 60; *Anderson* v. *Hagen,* 19 Cal.App.2d 714, 719-720 [66 P.2d 168]; Rest.2d Trusts, § 24, com. *b*, p. 68.) The language employed by the parties is only one of the factors to be considered. (*Abrams* v. *Crocker-Citizens Nat. Bank, supra.*) "The intention of the parties is to be ascertained from their words and conduct in light of the circumstances

---

[2]The intent of the parties is ascertained by an objective rather than a subjective standard. (See *McGhee* v. *Bank of America,* 60 Cal.App.3d 442, 448 [131 Cal.Rptr. 482]; Rest.2d Trusts, § 23, com. *a*, p. 66.)

surrounding the transaction." (*Abrams* v. *Crocker-Citizens Nat. Bank, supra,* 41 Cal.App.3d at p. 59; accord: Rest.2d Trusts, § 12, com. *g,* p. 37.)

We are called upon to review, therefore, not so much the trial court's interpretation of the language of written instruments as its determination of the parties' intent with respect to the relationship created, based in part on their written words, but also based in part on the evidence of the circumstances surrounding the transaction and the conduct of the parties. Whether the parties intended to create a trust or debtor-creditor relationship is a question of fact. (*Abrams* v. *Crocker-Citizens Nat. Bank, supra,* 41 Cal.App.3d at pp. 59-61; see *Marsh* v. *Home Fed. Sav. & Loan Assn.,* 66 Cal.App.3d 674, 680 [136 Cal.Rptr. 180].) ■ Where, as here, the trial court's determination of fact is based on evidence which, if not itself conflicting, gives rise to conflicting inferences, the substantial evidence rule applies and the trial court's determination will not be disturbed on appeal. (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689]; *Northwestern Mut. Ins. Co.* v. *Farmers' Ins. Group,* 76 Cal.App.3d 1031, 1053 [143 Cal.Rptr. 415].)

B. *Characteristics of the Relationships*

Although the ultimate question is whether the parties intended a trust or debtor-creditor relationship it is helpful in discussing the evidence bearing on the parties' intent to have in mind some of the more significant characteristics and consequences of these legal relationships. ■ Where the payment of money is intended to create a trust, the payor (trustor-beneficiary) retains the beneficial interest in the money paid (see Rest.2d Trusts, § 12, coms. *a* and *g,* pp. 35, 37); the payee (trustee) may not use the money for his own purposes (Civ. Code, § 2229; see Rest.2d Trusts, § 12, coms. *g* and *l,* pp. 37, 41) and, in the absence of an agreement to the contrary, must keep the money separate from his own (see Rest.2d Trusts, § 179); ordinarily he may not offset the money paid against the debts owing to him in his individual capacity (Civ. Code, § 2263; see Bogert, Trusts and Trustees (2d ed. 1965) § 17, p. 107); generally he has a duty to invest the money and make it productive (Civ. Code, § 2262; see Rest.2d Trusts, § 181); in the absence of an agreement to the contrary, he, as trustee, is entitled to reimbursement for all expenses actually and properly incurred in the performance of the trust (Civ. Code, § 2273) and reasonable compensation for his services as trustee (Civ. Code, § 2274); and, finally, if the money paid is lost or destroyed without fault of the payee, the payee is not liable

therefor and the loss is borne by the payor (see Rest.2d Trusts, § 12, com. *e* and illus. 3, p. 36). ■ By contrast, where the payment of money is intended to create a debtor-creditor relationship, even though the payee may be contractually obligated to pay an equal amount to a third person, the money paid becomes the property of the payee and he may commingle it with his other funds and use it for his own purposes, and the payor retains no beneficial interest in the money but, rather, relies upon his contractual rights against the payee. (See Rest.2d Trusts, § 12, coms. *a* and *g,* pp. 35, 37.) If the money paid is lost or destroyed without fault of the payee, his obligation to pay an equal amount to the third person is not discharged and the loss is borne by the payee. (See Rest.2d Trusts, § 12, com. *e* and illus. 4, p. 36.)

## C. *The Writings*

The deed of trust executed by plaintiff and her husband incorporates 26 provisions of a previously recorded fictitious deed of trust[3] the purpose of which is expressly stated to be: "To Protect the Security of This Deed of Trust." By and large, these provisions obligate plaintiff as one of the trustors to do or refrain from doing specified acts, all to enhance the security of the deed of trust. Provision (1) obligates plaintiff to maintain the property in good condition; provision (2) obligates plaintiff to provide and maintain hazard insurance covering the property; provision (4) obligates plaintiff to pay prior to delinquency all taxes and assessments affecting the property; provision (6), upon which plaintiff so heavily relies, obligates plaintiff to pay monthly, in addition to all other payments, the impound payments here involved;[4] provision

---

[3]The 26 provisions of the fictitious deed of trust are printed in full on the reverse side of the deed of trust executed by plaintiff and her husband. There is no contention that plaintiff and her husband were unaware or did not understand these provisions. On the contrary, plaintiff's contention that a trust was created is based largely, if not exclusively, on provision (6).

[4]Provision (6) reads in full: "(6) To insure the payment of taxes and assessments affecting the property described at least ten days before the delinquency thereof as provided for in paragraph (4) hereinabove, and to pay such premiums upon policies of insurance which may be required by the Beneficiary as provided for in paragraph (2) hereinabove, the *Trustor agrees to pay to the Beneficiary each month, in addition to any other payments required hereunder,* an installment of the taxes and special assessments levied or to be levied against the hereinabove described premises and an installment of the premium or premiums that will become due and payable to renew the insurance on the premises covered hereby and required by the Beneficiary, Trustor agreeing to deliver promptly to Beneficiary all bills and notices therefor. Such installments shall be equal to the estimated premium or premiums for such insurance and taxes and assessments next due (as estimated by Beneficiary) less all installments already paid therefor, divided by the number of months that are to elapse before one month prior to the date when such

(7) provides that in the event of any default in performance by plaintiff under the note or deed of trust, defendant as beneficiary may, at its option, apply any unexpended money received as impound payments to the payment of principal and interest on the note secured.

Plaintiff relies largely, if not exclusively, on that part of provision (6) which reads "At the option of Beneficiary, all moneys paid to Beneficiary under the terms of this paragraph *shall be held* by Beneficiary *in trust* to pay such premium or premiums, taxes and assessments before the same become delinquent. . . ." (Italics added.) Certainly it must be said that the use of this language does indicate a trust was intended. However, as previously pointed out, the use by the parties of the words "in trust" is not conclusive proof of their intent to create a trust relationship; the language employed by the parties is only one of the evidentiary facts to be considered. (*Abrams* v. *Crocker-Citizens Nat. Bank, supra,* 41 Cal.App.3d at pp. 59, 60; *Anderson* v. *Hagen, supra,* 19 Cal.App.2d at pp. 719-720; Rest.2d Trusts, § 12, com. *g,* p. 37, and § 24, com. *b,* p. 68.) Moreover, this language is only part of the language used by the parties.

The very language relied on by plaintiff is followed by the language, "*or* may be credited [by beneficiary] directly to interest and principal due under the terms of the obligation secured hereby . . . ." (Italics added.) Thus, even by the language of this part of provision (6) defendant as beneficiary under the deed of trust was given the option to hold impound payments "in trust" or to apply them to payment of principal and interest on the promissory note. Since the option is not restricted in any way, an initial decision by defendant not to apply a payment to principal and interest under the note would not preclude a subsequent election to so apply that payment or any subsequent payment. Plaintiff urges this option given defendant is of no significance since, inasmuch as defen-

---

premium or premiums and taxes and assessments will become delinquent. If the amounts paid to the Beneficiary under the provisions of this paragraph are insufficient to discharge the obligation of the Trustor to pay such premium or premiums, taxes and assessments as the same became due, Trustor shall pay to Beneficiary upon its demand such additional sums as it may require to discharge Trustor's obligation to pay premium or premiums, taxes and assessments. *At the option of Beneficiary, all moneys paid to Beneficiary under the terms of this paragraph shall be held by Beneficiary in trust to pay such premium or premiums, taxes and assessments before the same become delinquent, or may be credited directly to interest and principal due under the terms of the obligation secured hereby*: if said moneys are so credited to interest and principal, then upon payment by the Beneficiary of taxes, assessments and insurance premiums, the amount so paid shall be charged to the principal due upon the obligation secured hereby. *If the Trustor shall fail to pay the installments provided for in this paragraph, such failure shall constitute a default under this Deed of Trust.*" (Italics added.)

dant did not apply the impound payments to payment of principal and interest under the note, it must have intended to hold them "in trust." Plaintiff misses the point. The point is that defendant, the asserted trustee, is given the power to hold the payments "in trust" or not at any time as best serves its own interests. Such a power is inconsistent with the fiduciary duties of a trustee and, while not conclusive, suggests defendant was not truly intended to be a trustee and that plaintiff, having no control whatever over defendant's treatment of the payments, could not have intended the creation of a trust.

A few days prior to execution of the deed of trust, plaintiff and her husband signed a deposit receipt which, in part, in nonstandardized, handwritten language stated: "Buyer to pay $450 dn. payment & $250 in impound acct. Total payment including principal, interest, taxes & insurance to be approx. $183 per month." In addition, concurrently with the execution of the deed of trust, plaintiff and her husband executed a nonstandardized, typewritten escrow amendment which provided in part: "The undersigned understands and agrees that Prudential will require additional monthly remittances of $35, or as Prudential may from year to year readjust sufficient to pay taxes and insurance premiums which may arise on subject property." Both of these documents refer to plaintiff's obligation to make impound payments. However, neither contains any language even remotely suggesting that plaintiff would retain any beneficial interest in the moneys paid or that a trust relationship was intended. On the contrary, particularly in the language of the deposit receipt, the payment on account of taxes and insurance is not differentiated from the payment on account of principal and interest and, indeed, all are lumped together as "[t]otal payment." The trial court concluded the language used in these documents was "more consistent with the concept of a debt than of a trust." We agree.

The trial court both found and concluded that the primary purpose for the requirement of impound payments was to enhance the security of defendant. This determination is fully supported by the deed of trust which expressly states the purpose of provisions (1) through (26) is "To Protect the Security of This Deed of Trust," and makes a failure by plaintiff to pay any required impound payment a default. It is further supported by the fact that plaintiff's purchase of the property was financed by a "loan to facilitate" with a down payment of only $450, whereas the annual taxes on the property were alone $376. While again inconclusive, the fact that the impound payment requirement was for the benefit of defendant rather than plaintiff suggests the improbability

defendant intended to constitute itself a trustee and thereby undertake the onerous responsibilities attendant upon that status.

Plaintiff urges the deed of trust is a document of adhesion and any ambiguities in its language must be resolved against defendant. (*Tahoe National Bank* v. *Phillips,* 4 Cal.3d 11, 20 [92 Cal.Rptr. 704, 480 P.2d 320].) Even if the deed of trust were to be viewed as a document of adhesion, we doubt the applicability of the rule urged. At the very least, plaintiff greatly exaggerates its significance. As previously indicated, the problem presented is not so much the interpretation of ambiguous language in the deed of trust as the ascertainment of the parties' intent concerning the relationship created from a whole body of evidence of which the deed of trust language is only a part. (See *Abrams* v. *Crocker-Citizens Nat. Bank, supra,* 41 Cal.App.3d at p. 60.) ▮ In any event, the trial court concluded that, in the circumstances of the case at bench, the deed of trust was not an adhesive document. Among other pertinent findings of the trial court, finding 20 reads: "Plaintiff and her husband, as purchasers, had at least equal if not superior bargaining power to defendant Prudential, and they had the skill and opportunity to exercise it. It was not a 'take it, or leave it' transaction."

▮ As stated in *Steven* v. *Fidelity & Casualty Co.,* 58 Cal.2d 862, 882 [27 Cal.Rptr. 172, 377 P.2d 284]: "The term ['contract of adhesion'] refers to a standardized contract prepared entirely by one party to the transaction for the acceptance of the other; such a contract, due to the disparity in bargaining power between the draftsman and the second party, must be accepted or rejected by the second party on a 'take it or leave it' basis, without opportunity for bargaining and under such conditions that the 'adherer' cannot obtain the desired product or service save by acquiescing in the form agreement." (Fns. omitted.) The relative bargaining power of the parties, whether the document's provisions were offered on a take-it-or-leave-it basis without opportunity for bargaining and whether the desired product or service could be obtained only by acquiescing in the document's provisions present factual questions to be determined by the trial court upon appropriate proof. (See *La Sala* v. *American Sav. & Loan Assn.,* 5 Cal.3d 864, 877 [97 Cal.Rptr. 849, 489 P.2d 1113]; *McGhee* v. *Bank of America, supra,* 60 Cal.App.3d at pp. 449, 450.)

▮ The findings by the trial court that plaintiff and her husband had at least equal if not superior bargaining power to defendant, that they had the skill and opportunity to bargain, and that it was not a

take-it-or-leave-it transaction are amply supported by the evidence. Defendant owned the house purchased together with some 40 others by virtue of foreclosure sales. The area was overbuilt and there were few buyers. Defendant was anxious to sell these houses because they were accruing taxes and maintenance costs without producing any income. Accordingly, the requirement of impound payments was negotiable, as were the other terms of sale. (See fn. 1, *ante.*) Plaintiff's husband, who negotiated the purchase and loan transaction for plaintiff was an attorney of 17 years' experience, familiar with real estate transactions generally and the purchase of residential houses. The Petherbridges apparently realized their negotiating power, for they did negotiate for repairs on the house prior to its transfer. Plaintiff's argument that it is unrealistic to suppose defendant would have altered the language of its standard deed of trust which incorporated the impound payment requirement from a previously recorded fictitious deed of trust misses the point. The evidence indicates not that the language of the standard deed of trust would be changed but that defendant might have waived the impound payment requirement entirely if other satisfactory security arrangements were negotiated or a greater down payment made.

### D. *Conduct of the Parties*

Perhaps the most probative evidence on the question of intent is the conduct of the parties *ante litem motam.* Defendant's conduct was entirely inconsistent with a trust relationship and its attendant legal consequences. Consistent with custom and usage in the industry, impound payments were commingled with defendant's general assets and used for defendant's ordinary business purposes. Defendant did not purport to account to plaintiff for any of the income realized from its use of the impound payments nor did it pay any part thereof to plaintiff. It did not assert any right to reimbursement for expenses incurred or compensation for its services. It carried the aggregate unexpended balance of impound payments received from all borrowers on its books under an account representing a claim against its general assets. It is true defendant sent the Petherbridges a monthly statement which, separately from transactions relating to payment of principal and interest, itemized transactions relating to impound payments, including the previous month's payment, any disbursements for the payment of taxes or insurance premiums, and the amount of payments unexpended. Furnishing such statements, however, can hardly be considered indicative of a trust relationship. Banks furnish persons having a checking account a detailed, itemized statement of account each month showing deposits,

payments and the account balance, but the relationship between a bank and the holder of a checking account is that of debtor-creditor. (See Rest.2d Trusts, § 12, com. *l*, p. 41.)

While less unequivocal, the conduct of the Petherbridges is also contraindicative of a trust relationship and its attendant legal consequences. The impounds were paid to defendant as part of a lump sum payment including principal and interest on the note. Impound payments were not designated as such nor in any way differentiated from payments of principal and interest. Although plaintiff testified she learned in late 1970 that defendant was commingling the impound payments with its general funds, at no time prior to instituting suit did she or her husband ever demand from defendant an accounting of the earnings realized from the use of the unexpended impound payments or payment of any part of such earnings. On the contrary, after plaintiff was fully advised of defendant's handling and use of the impound payments, she requested the amount of her impound payments to be increased to include her hazard insurance premiums.

### Conclusion

We conclude the trial court's determination the parties did not intend to create a trust is amply, if not overwhelmingly, supported by the evidence. In view of the fact the dominant purpose of the impound payment arrangement was to enhance the security of the deed of trust and, thus, to benefit defendant, not plaintiff, it would not be reasonable to expect that defendant would undertake the onerous responsibilities of a trustee. The same conclusion is indicated by the relatively small sums involved and the relatively short time between defendant's receipt of impound moneys and its payment of taxes and insurance premiums. The written instruments are inconclusive, but the parties' conduct persuasively indicates they intended the legal consequences attendant upon a debtor-creditor relationship, not those of a trust. Plaintiff's actions do not manifest an intention to create a trust. Defendant's treatment of the impound payments was entirely inconsistent with the existence of a trust. In view of defendant's conduct, the only reasonable expectation it could have had is that in the event of the no-fault loss of these funds, it would remain obligated to pay taxes and insurance premiums and it, not plaintiff, would bear the loss. There is nothing in plaintiff's words or actions manifesting an expectation to the contrary. The expectation of that legal consequence is a sure indication the relationship intended was

that of debtor-creditor, not trustee-beneficiary. (See Rest.2d Trusts, § 12, com. *e* and illus. 3 and 4, p. 36.)

The determination of the trial court in the case at bench accords with a substantial number of decisions in other jurisdictions on similar facts. (See, e.g., *Brooks* v. *Valley National Bank* (1975) 24 Ariz.App. 484 [539 P.2d 958], and cases cited and discussed therein.) However, since the determination of the parties' intent necessarily turns on the particular facts and circumstances in each case, we attach no great significance to this coincidence in result.

Similarly, the result reached in the case at bench appears to be consistent with the most recent legislative enactment touching the subject. Civil Code section 2954.8 effective January 1, 1977 (Stats. 1976, ch. 25) requires financial institutions that make loans on one- to four-family residences to pay interest at the rate of 2 percent per annum on money received in advance for payment of insurance premiums, taxes and assessments unless the money is "placed by a financial institution other than a bank in a non-interest-bearing demand trust fund account of a bank." The payment of interest is generally regarded as characteristic of a debtor-creditor relationship. (See *Marsh* v. *Home Fed. Sav. & Loan Assn., supra,* 66 Cal.App.3d at p. 682, fn. 4; Rest.2d Trusts, § 12, com. *g,* pp. 37-38.)

Contrary to plaintiff's contention, the determination in the case at bench that, on the evidence presented, the parties did not intend a trust relationship is not contrary to the decision of the First Division of this court in *Marsh* v. *Home Fed. Sav. & Loan Assn., supra,* 66 Cal.App.3d 674. That case involved a class action for the recovery of earnings the defendant savings and loan association derived from its use of impound moneys. The trust deed provision there involved read: " 'At the option of Beneficiary, all moneys paid to Beneficiary under the terms of this paragraph *may be held by the Beneficiary in trust in the general funds without interest,* to pay such premium or premiums, taxes and assessments before the same become delinquent. . . .' " (66 Cal.App.3d at p. 678; original italics deleted; italics added.) The trial court granted summary judgment in favor of the defendant savings and loan association. The Court of Appeal affirmed the judgment purporting to hold that, while a trust was created, the defendant was not required to account for earnings derived from use of the impound moneys because of the

agreement of the parties that the defendant could commingle such moneys with its general funds without paying interest. (66 Cal.App.3d at pp. 684-685.)

Preliminarily, it should be pointed out that the language of the written instruments involved in the *Marsh* case was considerably more indicative of an intent to create a trust than that in the case at bench. The same paragraph in which the " 'held . . . in trust' " language appeared required payment of " 'monthly advance installments of taxes, assessments, and insurance premiums *for the purpose of accumulating a fund* (commonly known as a reserve or impound account) . . . .' " (66 Cal.App.3d at p. 678; italics added.) In addition, *Marsh*'s loan application to defendant provided with respect to impounds: " 'In consideration of the granting of this loan, I agree to *deposit* monthly with the Association *in a fund for Miscellaneous Charges,* commonly referred to as an impound or reserve account, an amount sufficient to amortize estimated amount of all charges payable . . . and agree that said Association, at its option, *may take from such account* at any time *any sums of money to my credit . . . .* ' " (66 Cal.App.3d at p. 679; italics added.) More importantly, we are constrained to point out that, notwithstanding its extended length, the discussion of the relationship between the parties and the conclusion that a trust was created was unnecessary to the decision. The suit sought recovery of earnings from use of impound moneys. The holding in the case is that the plaintiff was not entitled to such recovery because the parties had agreed the moneys could be held with defendant's general funds without payment of interest. (66 Cal.App.3d at pp. 684-685.) The holding would have been precisely the same had the court assumed, without purporting to decide, a trust existed.

The crucial point of distinction, however, is that in *Marsh,* on defendant's motion for summary judgment, both the trial court and the Court of Appeal determined the question of the parties' intent, which was expressly recognized as being a factual question, exclusively from the written instruments pertaining to the transaction. (66 Cal.App.3d at p. 680.) Here, the case was fully tried and the question of intent was determined on the basis of a whole body of evidence, including the parties' conduct and the circumstances surrounding the transaction, of which the language in the written instruments was only one part. The evidence is different; the determination is different. There is no inconsistency.

## Disposition

In view of our conclusion that the judgment on the merits is to be affirmed, consideration of the order determining plaintiff could not maintain the suit as a class action is unnecessary. The purported appeal from that order is dismissed. The judgment is affirmed.

Gardner, P. J., and Morris, J., concurred.

A petition for a rehearing was denied April 24, 1978, and appellant's petition for a hearing by the Supreme Court was denied June 1, 1978.