**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

APR 21 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In the Matter of: INDYMAC BANCORP, INC., | No. 12-56218 |
| Debtor, | D.C. No. 2:12-cv-02967-RGK |
| FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as Receiver of IndyMac Bank FSB and as Conservator of IndyMac Federal Bank FSB, | MEMORANDUM* |
| Appellant, | |
| v. | |
| ALFRED H. SIEGEL, solely as Chapter 7 Trustee of the estate of IndyMac, | |
| Appellee. | |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted April 9, 2014
Pasadena, California

Before: FERNANDEZ, N.R. SMITH, and MURGUIA, Circuit Judges.

_____

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

The Federal Deposit Insurance Corporation ("FDIC"), as receiver for the closed IndyMac Bank F.S.B. ("Bank"), appeals the district and bankruptcy courts' decisions declaring over $55 million in tax refunds as property of the IndyMac Bancorp, Inc. ("Bancorp") estate.

A bankruptcy "estate is comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55 (1979).

We have previously held, in the context of tax refunds attributable to a subsidiary (but held by a parent as a result of a decision to file consolidated tax returns) that "as a matter of state corporation law the parties are free to adjust among themselves the ultimate tax liability." *W. Dealer Mgmt. v. England (In re Bob Richards Chrysler-Plymouth Corp.)*, 473 F.2d 262, 264 (9th Cir. 1973) [hereinafter *Bob Richards*]. This may be done through "an explicit agreement," or an agreement implied by the parties' past practices. *Id.* at 264 & n.4. However, where "the parties [have] made no agreement concerning the ultimate disposition

of the tax refund," the parent holds the tax refunds in trust for the subsidiary. *Id.* at 265.

The TSA clearly adjusts the parties' ultimate tax liability in Sections 2 and 3 of the TSA.[1] Section 2 of the TSA describes the process by which the Bank will pay Bancorp its share of taxes, and Bancorp is obliged to return any excess at year end to the Bank; Section 3 of the TSA describes the process by which Bancorp will allocate the tax refunds, if any, attributable to any of the Bank's current losses used to compute tax liability for the consolidated group. Therefore, *Bob Richards* dictates that we follow California state law in determining whether the tax refunds are property of Bancorp's estate.

The TSA does not establish a principal-agent relationship under California law, because the Bank does not exercise control over Bancorp's activities under the TSA. *See Foothill Capital Corp. v. Clare's Food Mkt., Inc. (In re Coupon Clearing Serv., Inc.)*, 113 F.3d 1091, 1099 (9th Cir. 1997) (citing *Violette v. Shoup*, 20 Cal. Rptr. 2d 358, 363 (Cal. Ct. App. 1993)). Rather, Section 5 of the TSA gives Bancorp "sole discretion" to determine the "means and manner," see *Kaplan v. Coldwell Banker Residential Affiliates, Inc.*, 69 Cal. Rptr. 2d 640, 642 (Cal. Ct.

---

[1]Neither party disputes the lower courts' conclusions that the TSA is unambiguous, so we must ascertain the parties' intent from the TSA alone. *See State v. Cont'l Ins. Co.*, 281 P.3d 1000, 1004 (Cal. 2012).

App. 1997), of preparing and filing tax returns, resolving tax disputes, and paying refunds. Even though Section 5 also appoints Bancorp as the Bank's "agent and attorney-in-fact," this appointment does not give the Bank any control; it cannot be reconciled with the plenary discretion which the Bank vests in Bancorp through all other sections of the TSA.

The TSA does not create a trust relationship. The absence of language creating a trust relationship is explicitly an indication of a debtor-creditor relationship in California. *See Petherbridge v. Prudential Sav. & Loan Ass'n*, 145 Cal. Rptr. 87, 94 (Cal. Ct. App. 1978). Further, the fact that the TSA's preamble states that the parties' intent is to determine the Bank's tax liability as if it were filing its own tax returns does not strengthen the FDIC's argument. *See id.* (A debtor-creditor relationship may exist "even though the payee may be contractually obligated to pay an equal amount to a third person."). Indeed, Bancorp is not prohibited from using taxes paid or tax refunds as its own or commingling funds paid to it by the Bank or received from taxation authorities. *See id*. The Bank also does not bear the risk of loss. *See id*. Therefore, the district and bankruptcy courts were correct to conclude that tax refunds are property of Bancorp's estate. *See id*.

The FDIC's claim that recognizing a debtor-creditor relationship here would violate federal banking laws is unavailing. A run-of-the-mill contract claim is not a "covered transaction" under the federal banking laws cited by the FDIC. *See* 12 U.S.C. § 371c(b)(7) (defining "covered transaction").

Finally, we need not address the Eleventh Circuit's recent decision in *FDIC v. Zucker (In re NetBank, Inc.)*, 729 F.3d 1344 (11th Cir. 2013), because it involved a tax sharing agreement that explicitly incorporated the Interagency Statement on Income Tax Allocation in  Holding Company Structure (which the TSA in this case did not)[2] and involved the application of Georgia, not California, state law.

**AFFIRMED**.

---

[2]We reject the FDIC's contention that the reference to applicable "rules" in Section 10 of the TSA incorporated this specific policy.