854 F.2d 351
 19 Collier Bankr.Cas.2d 707, 18 Bankr.Ct.Dec. 410,
Bankr. L. Rep. P 72,430
 In re B.I. FINANCIAL SERVICES GROUP, INC., dba B.I.
Associates, dba Capital Corporation, dba Kompleat
Graphics, Debtor.
ALTURA PARTNERSHIP; Don Goldberg; Barbara Goldstein;
Dayton Anderson; Helen Anderson, et al.,
Plaintiffs-Appellants,
v.
BRENINC, INC.; Income Administration, Inc., Defendants,
and
Frederick S. Wyle, Trustee, a professional corporation,
Defendant-Appellee.
 No. 87-1866.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 13, 1988.
Decided Aug. 18, 1988.
 
 George S.L. Dunlop, Dunlop & Haslam, South Laguna, Cal., for plaintiffs-appellants.
 Douglas G. Boven, Dinkelspiel & Dinkelspiel, San Francisco, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before FERGUSON and LEAVY, Circuit Judges, and McDONALD,* District Judge.
 LEAVY, Circuit Judge:
 
 
 1
 The appellants appeal the district court judgment affirming the final judgment of the bankruptcy court in an adversary action. The appellants sought to reclaim their money from the trustee of the bankrupt estate on the theory that the debtor held the appellants' money in an express trust or bailment. The bankruptcy court ruled, and the district court affirmed, that no express trust or bailment was intended or created and that the appellants were creditors of the bankrupt estate. We affirm.
 
 FACTS AND PROCEEDINGS
 
 2
 On February 1, 1983, the debtors in this case--B.I. Financial Services Group, Inc., Income Administration, Inc., and Breninc, Inc.--filed separate petitions in bankruptcy under chapter 11, 11 U.S.C. Secs. 1101-1174 (1979 & Supp.1987). On February 4, 1983, Frederick S. Wyle, the appellee in this case, was appointed the reorganization trustee for all three entities. On March 11, 1983, Wyle took possession of $2,585,727.61 deposited by Income Administration at the Redwood Bank in California. The bankruptcy court confirmed the trustee's plan of reorganization on August 10, 1984.
 
 
 3
 This action arises out of an investment scheme by the debtors offering high rates of return.[1] The debtors sold investment opportunities called High Income Accounts (HIA) to the appellants and others. The trustee's third report to the bankruptcy court concludes that the HIAs were actually an elaborate "Ponzi" scheme. The scheme used seventeen bank accounts at eight banks, through which a volume of $53,854,139 in transactions was generated on the basis of $11,472,699 in investments and fees paid by persons establishing HIAs. Approximately 450 persons and entities invested in the HIAs. These thirty-seven appellants were among the last investors to establish HIAs. They invested a total of approximately $972,743.
 
 
 4
 All HIA investors, including these appellants, were treated substantially the same. The debtors marketed their HIAs using standardized promotional literature and representations on which the investors relied. This literature assured the HIA purchasers that funds generated by the sale of their accounts would be placed in governmental securities or other safe forms of investment. However, the debtors would not reveal to the appellants precisely where the HIAs would be reinvested.
 
 
 5
 All the investors signed an Investment Management Agreement (IMA) with B.I. Financial Services. Under the IMA, the investors were "clients" and B.I. Financial Services was the "investment manager." The HIA accounts consisted of "funds and securities" and Income Administration was the "client services agent." The word "trust" was not used in the IMA or related documents. The investors made their checks payable to the "Income Administration Trust Account." These checks were forwarded to Income Administration, which in turn transmitted the checks to the Redwood Bank.
 
 
 6
 The IMA provided that the debtors would forfeit management fees if investors made less than 5% profit per quarter. The debtors sent the investors fictitious account statements, purporting to show substantial earnings. However, the debtors never had any earnings out of which to pay profits on the HIAs.
 
 
 7
 Separate purchases or investments for individual HIA accounts were not made. Rather, all the investment funds were pooled and deposited into a "Custodial Agency Account" at the Redwood Bank, for which Income Administration was the customer. The bankruptcy court found that these funds were invested only in worthless Breninc promissory notes and one certificate of deposit, and some were "siphoned off in the form of questionable management fees." The Custodial Account was not a checking account, but rather consisted of bookkeeping records maintained under three reference numbers.
 
 
 8
 Income Administration also maintained a separate commercial checking account at Redwood Bank. From time to time, Brawner instructed Redwood Bank to transfer funds from the Custodial Account to Income Administration's checking account or directly to Breninc, in return for Breninc's worthless promissory notes.
 
 
 9
 On the date of the bankruptcies, Redwood Bank had $779,915.57 in cash and a certificate of deposit for $1,805,812.04 in the Custodial Account. The certificate of deposit was liquidated, and with the cash, turned over to the trustee.
 
 
 10
 The appellants' situation differs from that of other HIA purchasers in that the money the appellants invested had not yet been transferred out of the Custodial Account and was included in the funds Redwood Bank turned over to the trustee. Also, the IMAs signed by the appellants were never formally accepted or executed by any of the debtors.
 
 
 11
 The appellants brought this action against the bankruptcy trustee to recover the money each invested with B.I. Financial Services and Income Administration. The appellants claimed they each created an express trust and/or bailment relationship with B.I. Financial Services and Income Administration. According to the appellants, Income Administration was merely the trustee of their funds and had only limited authority over their money. Consequently, if the appellants still held the beneficial interest in their investments, the bankruptcy estate could not claim the money as part of the estate. Because the appellants' funds were traceable to a discrete account of Income Administration at Redwood Bank, the appellants argued the funds were their property and not that of the bankruptcy trustee.
 
 
 12
 In its Findings of Fact and Conclusions of Law, the bankruptcy court concluded that the appellants "neither created nor intended to create express trusts or bailments." The bankruptcy court found that the appellants surrendered control over their HIA funds to the debtors. It further found the HIAs were investment contracts, under state and federal securities laws. As holders of investment contracts, the court concluded the appellants are creditors of the bankruptcy estate, just like all the other investors. The district court affirmed.
 
 APPELLANTS' CONTENTIONS ON APPEAL
 
 13
 On appeal, the appellants argue that the bankruptcy court erroneously found the HIAs were investments contracts under state and federal securities laws, rather than express trusts or bailments. The appellants contend the court should not have looked to securities law to determine their interest, but rather, the court should have looked to California state law on trusts. The appellants argue that under state law, the debtors held the appellants' money in a trust or bailment and thus they were entitled to recover their entire investment because their funds never became part of the bankrupt estate.
 
 STANDARD OF REVIEW
 
 14
 Because the court of appeals is in as good a position as the district court to review the findings of the bankruptcy court, it independently reviews the bankruptcy court's decision. The court of appeals reviews the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo. Ragsdale v. Haller, 780 F.2d 794, 795 (9th Cir.1986).
 
 DISCUSSION
 
 15
 Under 11 U.S.C. Sec. 541(d) (1979 & Supp.1988), property in which the debtor holds only legal title, but not an equitable interest, becomes part of the bankrupt estate only to the extent of the debtor's legal interest in the property. Thus, property the debtor held in trust at the time of filing its bankruptcy petition is excluded from the bankruptcy estate. United States v. Whiting Pools, Inc., 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 2314 n. 10, 76 L.Ed.2d 515 (1983). In such situations, courts generally hold that the debtor should turn the property over to the holder of the beneficial interest. 4 L. King, Collier on Bankruptcy p 541.13 (15th ed. 1988). See Elliott v. Bumb, 356 F.2d 749, 753 (9th Cir.), cert. denied, 385 U.S. 829, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966).
 
 
 16
 When property of an estate is alleged to be held in trust, the claimant has the burden of establishing the original trust relationship. Collier on Bankruptcy, supra, at p 541.13. A claimant must prove its title, identify the trust property, and where the property has been mingled with that of the debtor, the claimant must adequately trace the property. Id. However, if the claimant cannot first show that a trust has been created, there is no need to inquire further as to whether the property can be identified or traced. Id. In that case, a simple debtor-creditor relationship exists.
 
 
 17
 Generally, whether a trust has been established is a question to be resolved under state law. Elliott, 356 F.2d at 753 (citing Jaffke v. Dunham, 352 U.S. 280, 281, 77 S.Ct. 307, 308, 1 L.Ed.2d 314 (1957)). Here, California law applies since the debtors and the trustee are citizens of California, the forum is California, and the trust property is located at the Redwood Bank in California.
 
 
 18
 Under California law, an express trust is created by acts or words of the trustor which indicate (1) an intention to create a trust and (2) the subject, purpose, and beneficiary of the trust. Abrams v. Crocker-Citizens Nat'l Bank, 41 Cal.App.3d 55, 59, 114 Cal.Rptr. 913, 915 (1974); Cal.Civ.Code Sec. 2221 (West 1985). Payment of money may create either a debt or a trust, depending on the parties' intent. Abrams, 41 Cal.App.3d at 59, 114 Cal.Rptr. at 915.
 
 
 19
 The parties' intent must be ascertained from their words and conduct in light of the circumstances surrounding the transaction. Petherbridge v. Prudential Savings & Loan Ass'n, 79 Cal.App.3d 509, 516, 145 Cal.Rptr. 87, 93 (1978) (citing Abrams, 41 Cal.App.3d at 59, 114 Cal.Rptr. at 915). When the payment of money is intended to create a trust, the payor retains the beneficial interest in the money, the payee may not use the money for its own purposes, and the payee generally may not mingle the payor's money with its own. Id. 79 Cal.App.3d at 517, 145 Cal.Rptr. at 94. In contrast, where the payment of money is intended to create a debtor-creditor relationship, even though the payee may be obligated to pay an equal amount to a third person, the money becomes the payee's property and the payee may mingle it with other funds and use it for its own purposes. Lack of control by the payor over treatment of its money is an indication of the establishment of a debtor-creditor, not trust, relationship. Id. at 518, 145 Cal.Rptr. at 94.
 
 
 20
 Here, the word "trust" was not used in the Investment Management Agreement or related documents. No party was designated as a "trustee" or "beneficiary." Nothing was designated as the subject matter of a trust, nor was a trust purpose stated. Rather, the documents used the terms "investment services," "investment accounts," "custodial agency account," and "client services agent" to describe the parties' relationship. B.I. Financial Services was the "investment manager" of the HIA accounts.
 
 
 21
 The appellants had no contractual relationship with Income Associates, to whom B.I. Financial Services transferred the appellants' funds. Income Administration entered into an agreement with Redwood Bank, in which the bank was the custodian of the appellants' pooled funds and Income Administration was the customer. Pursuant to this agreement, the appellants' funds were the property of Income Administration. The appellants did not have investment control over their funds, and in fact were not told how their monies were being invested.
 
 
 22
 These facts are inconsistent with finding that an express trust agreement existed between the appellants and the debtors. Neither the words of the IMA nor the actions of the parties demonstrates an intent to create a trust relationship. Because the appellants failed in their burden to show the existence of an intent to create a trust, the bankruptcy court correctly found that the appellants' relationship with the debtors is that of creditors, on an equal footing with other investors.
 
 CONCLUSION
 
 23
 The order of the district court affirming the judgment of the bankruptcy court is AFFIRMED.
 
 
 
 *
 The Honorable Alan A. McDonald, United States District Judge for the Eastern District of Washington, sitting by designation
 
 
 [1]
 The president of B.I. Financial Services, William Brawner, controlled debtors Income Administration and Breninc through a power of attorney