923 F.2d 641
 59 USLW 2478, 24 Collier Bankr.Cas.2d 813,
65 Ed. Law Rep. 319,
Bankr. L. Rep. P 73,784
 In re CALIFORNIA TRADE TECHNICAL SCHOOLS, INC., dba
California Trade Technical College, Debtor.
Arnold L. KUPETZ, Trustee for California Trade Technical
Schools, Inc., aka California Trade Technical
College, Plaintiff-Appellee,
v.
UNITED STATES of America, on Behalf of the UNITED STATES
DEPARTMENT OF EDUCATION, Defendant-Appellant.
 No. 89-55611.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 10, 1990.
Memorandum Sept. 25, 1990.
Order and Opinion Jan. 10, 1991.
 
 Frederick M. Brosio, Jr., and Kathryn M. Ritchie, Asst. U.S. Attys., Fred J. Marinucci, Office of Gen. Counsel, U.S. Dept. of Educ., Los Angeles, Cal., for defendant-appellant.
 Howard M. Ehrenberg, Sulmeyer, Kupetz, Baumann & Rothman, Los Angeles, Cal., for plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before REINHARDT and HALL, Circuit Judges, and RE, Chief Judge.*
 REINHARDT, Circuit Judge:
 
 
 1
 California Trade Technical Schools, Inc. ("CTTS") filed a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code on July 25, 1983. The case was converted to a chapter 7 liquidation proceeding on June 19, 1984. Shortly thereafter, Arnold Kupetz was appointed trustee of the bankruptcy estate. On August 21, 1986, Kupetz filed a complaint to recover funds transferred to the government on May 20, 1983 as an avoidable preference under 11 U.S.C. Sec. 547 (1979). The bankruptcy court granted summary judgment for Kupetz. The government timely appealed under Bankruptcy Rule 8002(a) and objected to disposition of the appeal by the Bankruptcy Appellate Panel. The appeal was transferred to the district court under 28 U.S.C. Sec. 158(a), and the district court affirmed the judgment of the bankruptcy court. The government timely filed a notice of appeal to this court under 28 U.S.C. Sec. 158(d).
 
 
 2
 On appeal, the government contends that, because the money transferred to the government on May 20, 1983 consisted of reconstituted trust funds, the money transferred on May 20, 1983 was not CTTS's property and thus was not subject to avoidance under section 547. Kupetz contends that, because none of the funds transferred were traceable to the originally diverted trust funds, the entire May 20 transfer consisted of CTTS's own property and is avoidable under section 547. We find that funds deposited into the federal trust account prior to the ninety-day preference period constituted valid trust funds; thus, the portion of the May 20 transfer consisting of such funds cannot be avoided by the trustee as a preference under section 547. However, we also find that the deposit of non-trust funds into the trust account within the ninety-day period constitutes a transfer of the debtor's property subject to the trustee's avoidance powers under section 547. We therefore affirm the district court as to the portion of the May 20 transfer consisting of funds deposited on April 26, 1983 but reverse as to the remainder of the May 20 transfer.[1]
 
 ISSUE PRESENTED
 
 3
 Did the bankruptcy court err in finding that, because funds in a trust account could not be traced to the trust funds originally diverted, the restored funds were property of the debtor and their transfer to the government could be avoided under 11 U.S.C. Sec. 547?
 
 FACTS
 
 4
 CTTS participated in federal student assistance programs authorized under Title IV of the Higher Education Act of 1965 ("title IV"), as amended, 20 U.S.C. Secs. 1070-98 (1982). Funds disbursed under title IV programs are held by the participating institution in trust for the intended student beneficiaries, and the institution may not use or hypothecate such funds for any other purpose. 34 C.F.R. Sec. 668.22 (1982). The Department of Education ("DOE") retains claim to any such trust funds that are not obligated to specific students for the current payment period. See 34 C.F.R. Secs. 668.13, 668.20, 668.83 (1982). CTTS maintained segregated "federal trust accounts" for the title IV funds it received.
 
 
 5
 Between September 1982 and January 1983, CTTS wrongfully diverted at least $461,682.02 from one such account at First International Bank ("the FIB account"). The parties agree that CTTS improperly dissipated these funds in general operating expenditures. DOE discovered the diversion of $461,682.02 and, in January 1983, demanded that CTTS restore the funds. On February 4, 1983, CTTS deposited $250,000 in the FIB account and sent DOE a letter stating that the $250,000 deposit was made in partial repayment of the diverted trust funds. DOE continued to demand repayment of the rest of the diverted money.[2] On April 26, 1983, CTTS deposited into the FIB account $211,682.02, the balance of the $461,682.02 initially diverted from the trust fund. Both the $250,000 and the $211,682.02 deposits consisted of money raised by CTTS independently of the diverted funds.
 
 
 6
 In May 1983, DOE terminated CTTS's participation in all Title IV programs and demanded the immediate return of all federal trust funds remaining in any CTTS bank account. In response, on May 20, 1983, CTTS transferred back to DOE $372,355.44. All but approximately $100.00 of this sum was transferred by check from the FIB account, and represented the remaining balance in that account. It is this transfer from the FIB account that is directly challenged by the bankruptcy trustee as an avoidable preference under 11 U.S.C. Sec. 547.
 
 STANDARD OF REVIEW
 
 7
 In reviewing a district court's affirmance of a bankruptcy court decision, this court's role is essentially the same as the district court's; findings of fact are reviewed under the "clearly erroneous" standard, and conclusions of law are reviewed de novo. Ragsdale v. Haller, 780 F.2d 794, 795 (9th Cir.1986).
 
 DISCUSSION
 
 8
 A bankruptcy trustee may avoid a transfer of property of the debtor if it was: (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt; (3) made while the debtor was insolvent; (4) made on or within ninety days before the date of the filing of the petition; and it (5) enables such creditor to receive more than it would receive if the transfer had not been made and the debtor's estate was liquidated according to the provisions of the Bankruptcy Code. 11 U.S.C. Sec. 547(b) (1982); Danning v. Bozek (In re Bullion Reserve of North America), 836 F.2d 1214, 1217 (9th Cir.1988), cert. denied, 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988).[3] In order to avoid a transfer as a preference under section 547, the trustee must also establish that the property involved was property of the debtor such that the transfer diminishes the fund from which bankruptcy creditors may be paid. Sierra Steel v. S. & S. Steel Fabrication (In re Sierra Steel, Inc.), 96 B.R. 271, 273 (Bankr. 9th Cir.1989); Shaw Industries v. Gill (In re Flooring Concepts, Inc.), 37 B.R. 957, 961 (Bankr. 9th Cir.1984). The government maintains that the challenged transfer involved federal funds held in trust by CTTS, and that, therefore, the bankruptcy court erred in finding that the funds transferred were property of CTTS.[4]
 
 
 9
 Bankruptcy law does not view property held in trust by the debtor as property of the estate available for general creditors.[5] Generally, property is only considered property of the debtor for purposes of section 547 if its transfer would deprive the estate of something which could be used to satisfy the claims of creditors. Danning, 836 F.2d at 1217. Property that the debtor holds in trust at the time the debtor files its bankruptcy petition is excluded from the bankruptcy estate and thus is not property of the debtor for purposes of section 547.[6] United States v. Whiting Pools, Inc., 462 U.S. 198, 206 n. 10, 103 S.Ct. 2309, 2314 n. 10, 76 L.Ed.2d 515 (1983) (obiter dictum ); B.I. Financial Services Group v. Altura Partnership (In re B.I. Financial Services Group, Inc.), 854 F.2d 351, 354 (9th Cir.1988).
 
 
 10
 Whether a trust has been established is generally a question to be resolved under the law of the state that is the situs of the trust fund. B.I. Financial, 854 F.2d at 354; Elliott, 356 F.2d at 753 (citing Jaffke v. Dunham, 352 U.S. 280, 281, 77 S.Ct. 307, 308, 1 L.Ed.2d 314 (1957)). Because all of CTTS's federal trust accounts, including the FIB account, were located in California, we apply California law in this case.
 
 
 11
 Under California law, money deposited back into the FIB account became federal trust funds. Where a trustee commingles trust funds with individual funds, dissipates the money, and then subsequently deposits individual funds into the trust account, the subsequent deposits become a part of the trust fund, and the beneficiary is entitled to treat them as such without proving express intent on the part of the trustee to replace the dissipated funds. Church v. Bailey, 90 Cal.App.2d 501, 504, 203 P.2d 547 (1949); see also Mitchell v. Dunn, 211 Cal. 129, 134, 294 P. 386 (1930) (where trustee deposits personal funds in a partially dissipated trust account, there is a strong presumption that it is the trustee's intention to make the trust fund whole). It has also been held that, even where a trust fund has been dissipated, the trust can be revived by subsequent deposits that are specifically intended to achieve this purpose. Alioto v. United States, 593 F.Supp. 1402, 1411 (N.D.Cal.1984) (citing In re Gottfried Baking Co., 312 F.Supp. 643, 645 (S.D.N.Y.1970)).[7] In this case, the trust fund in question was dissipated by CTTS's wrongful diversion of the title IV program funds. CTTS subsequently made two deposits by way of restitution for the initial diversion. In its correspondence with DOE, CTTS manifested the intent to restore the trust fund. Thus, under both Church and Alioto, the repayments made by CTTS on February 4 and April 26, 1983 effectively became trust funds upon their deposit.
 
 
 12
 Kupetz contends, however, that funds restored to a segregated trust account cannot be considered property held in trust unless the later deposits can be traced to the trust funds originally diverted. In support of this argument, Kupetz refers to a line of cases holding that where trust funds are wrongfully diverted, commingled with the trustee's general assets, and dissipated, the general assets of the trustee may not be impressed with a constructive trust, unless those assets are traced to the trust funds originally diverted. E.g., United States v. Air Florida, Inc., 56 B.R. 732, 734-35 (Bankr.S.D.Fla.1985), withdrawn, 68 B.R. 134 (Bankr.S.D.Fla.1986); Drabkin v. District of Columbia, 824 F.2d 1102, 1103 (D.C.Cir.1987). The imposition of a constructive trust upon the assets of the debtor is subject to the tracing requirement under bankruptcy law. Collier on Bankruptcy p 541.13.
 
 
 13
 However, unlike the cases cited by Kupetz, the present case involves an express trust relationship regarding funds kept in a discrete trust account. The tracing requirement discussed above only pertains to situations in which the would-be beneficiary seeks to impress a constructive trust upon currently commingled property of the debtor. See Collier on Bankruptcy, p 541.13, at 541-77 to 541-79. There is no precedent supporting the proposition that restored express trust funds are also subject to this requirement, and we do not believe that Kupetz's argument is consistent with applicable principles of bankruptcy law.[8] As noted earlier, under California law, restorative payments to a trust account serve to reconstitute a depleted trust fund. Thus, once CTTS deposited funds into the FIB trust account by way of restitution, the restored funds became valid trust funds that were no longer the property of CTTS and, therefore, no longer subject to the tracing requirement. It follows that the mere fact that the funds transferred were reconstituted trust funds is not, in itself, a sufficient basis for finding the transfer to constitute an improper preference subject to the trustee's avoiding powers under section 547.[9] Accordingly, it was error for the bankruptcy judge to rely upon the analytic framework of Air Florida and to conclude as a matter of law that, because the monies deposited in the FIB trust account could not be traced to the trust funds originally diverted, the funds in that account were property of CTTS for purposes of 11 U.S.C. Sec. 547.
 
 
 14
 Nonetheless, not all of the $372,254.44 transferred to DOE from the FIB account on May 20, 1983 is necessarily immune from the trustee's avoidance powers. Here, $211,682.02 was transferred into the FIB account on April 26, 1983, eighty-nine days before the commencement of the bankruptcy proceedings. It is the status of those funds at the time of that transfer that raises questions regarding avoidability. The facts reflect that CTTS had completely dissipated the originally diverted trust funds in general operating expenditures. Those funds could not be traced to any proceeds, beyond CTTS's temporarily continued existence. So long as the funds were not restored to the segregated FIB trust account, DOE could not impress a valid constructive trust upon the assets of CTTS. Thus, with regard to the sum diverted, DOE was reduced to the status of a general creditor. See Collier on Bankruptcy p 541.13, at 541-79. It was only the making of the restorative payments that allowed DOE to assert a superior interest. The issue, then, is whether the restitutional deposits to the FIB account were themselves avoidable transfers within the meaning of section 547.
 
 
 15
 The answer is clear with respect to the first restitutional deposit. That transfer of funds was made on February 4, 1983, prior to the commencement of the ninety-day preference period set forth in section 547(b)(4)(A). A transfer of funds to the trust account prior to the preference period falls outside the ambit of section 547 and may not be avoided by the bankruptcy trustee. Therefore, the portion of the May 20th transfer that consisted of funds that had themselves been transferred to the fund prior to the commencement of the preference period is not avoidable. However, the second transfer to the FIB account was made on April 26, 1983, the eighty-ninth day prior to the filing of CTTS's petition. We conclude that this deposit of $211,682.02 is avoidable by Kupetz as a transfer within the meaning of section 547.[10]
 
 
 16
 In his order of affirmance, the district judge held, "Ninth Circuit law makes clear that the replacement of funds in a trust account establishes a trust on such funds ... at the date of replacement." This premise ought to have led the district court to reverse the bankruptcy court as to the portion of the May 20 transfer consisting of trust funds remaining from the first restorative transfer--the February 4th repayment. But it did not. Rather, the district court apparently assumed that both restorative payments had been made within ninety days of the bankruptcy filing and affirmed the bankruptcy court's ruling as to the entire sum transferred to DOE on May 20. In so holding, the district court erred as to the portion of the funds that had been held in trust for more than ninety days before CTTS's filing.
 
 
 17
 Still, we affirm the district court as to the April 26 deposit. That transfer did constitute a preference within the ambit of section 547. While there appears to be no case law directly addressing whether a debtor-trustee's deposit of non-trust funds into a trust account by way of restitution constitutes a preference subject to avoidance, the facts of the April 26 deposit clearly fit the language of section 547. The money paid back into the account consisted of property that could have been used to satisfy the claims of CTTS's creditors, and was therefore property of the estate under Danning. Because the trust funds originally diverted were dissipated and could not be traced, DOE stood in the position of a general creditor with regard to those funds. Collier on Bankruptcy p 541.13, at 541-79. Having been made for DOE's benefit, the deposit satisfies the requirement that the transfer be "to or for the benefit of a creditor," under section 547(b)(1). The parties agree that the deposit was made in payment of a debt that CTTS had owed DOE since at least January, 1983. Thus the April 26 deposit was made "on account of an antecedent debt," as required by section 547(b)(2). There is no dispute regarding either CTTS's insolvency, under section 547(b)(3), or the fact that April 26, 1983 fell within ninety days of CTTS's filing, under section 547(b)(4).[11] The facts reflect that DOE's position was effectively identical to that of CTTS's other general creditors and that all of CTTS's creditors stood to receive less than their full claims. The government concedes that it received more by the $211,682.02 deposit than it would have had the deposit not been made and had CTTS's estate been liquidated according to the provisions of the Bankruptcy Code, as required by Sec. 547(b)(5). We therefore find that the April 26th deposit constitutes an avoidable preference under section 547.
 
 
 18
 DOE argues that even if the April 26th transfer is an avoidable preference it may not be held liable for any of the funds it ultimately received on May 20th due to that transfer because under section 550(b)(1) it was "a transferee that [took] for value, including satisfaction or securing of a present or antecedent debt." We reject this argument because section 550(b)(1) does not apply to "the initial transferee ... or the entity for whose benefit [the initial] transfer was made." 11 U.S.C. Sec. 550(a)(1). Our treatment of the April 26th transfer to the trust as a transfer to or for the benefit of DOE under section 547(b)(1) renders DOE an initial transferee, or an entity for whose benefit the initial transfer was made under section 550(a)(1). Contrary to DOE's assertion, treating a transfer to DOE's trust fund as equivalent to a transfer to DOE is entirely consistent with the Seventh Circuit's decision in Bonded Financial Services, Inc. v. European American Bank, 838 F.2d 890 (7th Cir.1988), where the court held that for purposes of section 550, a bank is not the equivalent of a client who has an account at the bank.
 
 
 19
 We must next determine how much if any of the May 20th transfer must be set aside in light of our conclusion that the April 26th transfer was avoidable. Kupetz contends that because the May 20th transfer merely moved funds from one government account to another, it did not entitle DOE to the use of any of the funds wrongfully transferred on April 26th. This contention is correct. However, Kupetz has sued to set aside the May 20th transfer, not the April 26th transfer. We therefore must determine the source of the funds transferred on May 20th.
 
 
 20
 DOE argues that it is not liable in the full amount of the April 26th transfer because only a portion of the funds transferred on that date were included in the subsequent May 20th transfer from the trust fund to DOE. DOE points out that as of the day before the April 26th transfer, the trust had a balance of $212,882, which was apparently the amount remaining from the $250,000 February transfer. The April 26th transfer added $211,682 to the trust, making the total amount in the trust account as of that date $424,564. The May 20th transfer from the trust account to DOE was in the amount of $372,355. The question then is whether all of the $211,682 transferred on April 26th was part of that $372,355 or whether the $372,355 was comprised principally of the amounts in the trust fund prior to the April 26th transfer. DOE urges the latter proposition. It argues that all of the funds that were in the trust on April 25th ($212,882) were transferred on May 20th, along with $160,473 from the $211,682 transferred in April. DOE contends that the funds that were disbursed from the trust between April 26th and May 20th should be attributed to the April 26th transfer rather than to the funds already in the trust account on that date. Thus, according to DOE, it is liable for only $160,473 (i.e., $372,355 minus the $212,882 in the trust account immediately prior to the April 26th transfer). DOE offers no direct authority to support what is essentially a LIFO (last in first out) rule. DOE instead analogizes to the fund-tracing principle of Restatement, Restitution, Sec. 212 (1937).
 
 
 21
 We reject DOE's proposed rule. The citation to Restatement Restitution, Sec. 212, far from supporting DOE's position, undermines it. Section 212 entitles an equitable creditor to a lien on a commingled account in the amount of the lowest intermediate balance in that account. DOE mistakenly contends that the lowest intermediate balance was the balance in the account on April 25th. But section 212 makes clear that "intermediate" refers to a time after the wrongful deposit. Comment a to that section states in part: "If the amount on deposit at all times after the deposit of the claimant's money equaled or exceeded the amount of his money so deposited, the claimant is entitled to a lien upon the deposit for the full amount of his money so deposited." Id. at 856. After April 26th, the balance in the trust account never fell below $211,682, the amount of the April 26th transfer. Therefore, if section 212 is to be our guide, we must conclude that the trustee was entitled to recover the full amount of that transfer.
 
 
 22
 Moreover, even aside from section 212, a FIFO (first in first out) rule is more appropriate here than a LIFO rule. A principal purpose of the provisions of the bankruptcy code that we must interpret in this case--and indeed, of fraudulent conveyance law generally--is to discourage last minute transfers from debtors. A FIFO rule serves that purpose by presuming that funds wrongfully transferred to an extant account at the eleventh hour remain there until all of the funds previously in the account have been expended. The FIFO rule thereby makes it more difficult for a debtor to dissipate funds owed to his creditors by commingling those funds with other money. Applying the FIFO rule here, we find that all of the funds transferred to the trust account on April 26th were subsequently transferred to the federal government's regular account on May 20th. Therefore, the district court's judgment for Kupetz is affirmed to the extent that it voided $211,682.02 of the May 20th transfer.
 
 CONCLUSION
 
 23
 The bankruptcy court erred in holding that the funds in the FIB account could be considered trust funds only if they qualified under the tracing requirement. The funds deposited by way of restitution became valid trust funds upon their deposit into the FIB trust account. Therefore, the district court erred in affirming the bankruptcy court as to the portion of the May 20 transfer that consisted of trust funds restored prior to the ninety-day preference period, and we reverse both the district and bankruptcy courts as to that portion of the May 20 transfer. However, because the funds deposited on April 26 were the property of CTTS prior to their deposit into the FIB trust account, the April 26 deposit itself constitutes an avoidable preference under section 547 of the Bankruptcy Code. We therefore affirm as to that portion of the May 20 transfer consisting of funds deposited into the FIB account on April 26. The case is remanded to the district court with instructions to enter judgment for Kupetz in the amount of $211,682.02, with interest calculated from May 20, 1983.
 
 
 24
 REVERSED IN PART; AFFIRMED IN PART.
 
 
 
 *
 The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation
 
 
 [1]
 The May 20 transfer consisted of $372,254.44. The April 26 deposit consisted of $211,682.02. The remainder ($160,572.42) consisted of funds deposited by way of restitution on February 4, 1983--long before the ninety-day preference period
 
 
 [2]
 DOE also began demanding other unaccounted-for trust funds which, according to its audits, were missing from the aggregate of CTTS's various federal trust accounts. The government continues to press its claim for funds in addition to the challenged transfer, but it claims those funds as a general creditor in the liquidation proceedings. Thus, that claim is not involved in this appeal
 
 
 [3]
 The Bankruptcy Code was amended in 1984, but those amendments do not apply to this case because CTTS filed its bankruptcy petition in 1983. See Danning, 836 F.2d at 1217 n. 2
 
 
 [4]
 The government does not challenge any other element of Sec. 547(b). Consequently, we address only the property status of the funds in the FIB account for purposes of avoidance
 
 
 [5]
 Under 11 U.S.C. Sec. 541(d), property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, becomes property of the estate only to the extent of the debtor's legal title to such property
 
 
 [6]
 Courts have generally held that the debtor should turn such property over to the holder of the beneficial interest. 4 L. King, Collier on Bankruptcy p 541.13, at 541-76 (15th ed. 1988); see e.g., Danning, 836 F.2d at 1217; Elliott v. Bumb, 356 F.2d 749, 753 (9th Cir.), cert. denied, 385 U.S. 829, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966)
 
 
 [7]
 California's decisional law of trusts is in line with common law trust precepts. See Restatement (Second) of Trusts, Sec. 202 comment m (1959) (new deposit to depleted trust account, in which individual and trust funds were mingled, treated as made by way of restitution of the trust funds previously withdrawn); Restatement of Restitution, Sec. 212 comment c (1937) ("if trustee deposited money of another in a fiduciary account for the other, wrongfully withdrew part of the money, and subsequently made additions of his own money, the inference is that he intended to make restitution," and "[t]he effect of making ... restitution for the amount withdrawn is the same as though the amount so restored had not been withdrawn")
 
 
 [8]
 Kupetz argues that common-law trust principles must give way before the overriding bankruptcy policy of equal distribution among similarly situated creditors. This contention is unsupported by the law. Indeed, the legislative history of 11 U.S.C. Sec. 541 indicates that Congress did not intend to increase the bankruptcy estate's title to property held in trust by the debtor. See H.R.Rep. No. 595, 95th Cong., 2nd Sess. 367-68, reprinted in 1978 U.S.Code Cong. & Admin.News 6323-24; S.Rep. No. 989, 95th Cong., 2nd Sess. 82, reprinted in 1978 U.S.Code & Admin.News 5787, 5868; 124 Cong.Rec. 32399, 33999 (1978) (remarks of Rep. Edwards and Sen. DeConcini) (where the debtor holds bare legal title without any equitable interest, the estate acquires bare legal title without any equitable interest in the property). We find that the application of common-law rules regarding the restoration of express trust funds does not offend federal bankruptcy policy
 
 
 [9]
 Kupetz also argues that "intended student beneficiaries" and not DOE held beneficial ownership of the trust funds. This argument is irrelevant; it is also wrong. 34 C.F.R. Secs. 668.13, 668.20, 668.83 clearly indicate that DOE holds residual beneficial ownership of any funds that are not obligated to specific students for the current payment period. The parties agree that the funds in question were not so obligated. It follows that DOE held beneficial ownership
 
 
 [10]
 Although other small deposits were made to the FIB account within the preference period, the record reflects that these deposits came from CTSS's other "federal trust accounts." Thus, these deposits consisted of valid trust funds and are not subject to avoidance under Sec. 547
 
 
 [11]
 Neither of the parties addressed Sec. 547(b)(4)(B), which allows transfers to "an insider" to be avoided if made between ninety days and one year before the filing of the petition. It should be noted, however, that neither the settlor nor the beneficiary of a trust, of which the debtor is trustee, are included in the Bankruptcy Code's definition of "insider." 11 U.S.C. Sec. 101(25) (1979)