In re SAN DIEGO REALTY
EXCHANGE, INC., Inv.
Debtor.

Harold S. TAXEL, Trustee Plaintiff,

v.

Michael VACA, and Michael Vaca as
Trustee of Michael Vaca Revocable
Trust Defendants.

Bankruptcy No. 90–3752–B7.
Adv. No. 90–90446–B7.

United States Bankruptcy Court,
S.D. California.

Aug. 21, 1991.

John L. Morrell and Gerald J. O'Neill, Higgs Fletcher and Mack, San Diego, Cal., for plaintiff.

E. Ludlow Keeney, Elisabeth F. Milburn, Mitchell, Keeney and Waite, San Diego, Cal., for defendants.

## OPINION

JAMES M. BURNS, Senior District Judge, Sitting by Designation.

### I. INTRODUCTION

Defendants ("Vaca") move for summary judgment against the plaintiff Taxel ("Trustee") on the basis that there are no genuine issues of material fact and that Vaca is entitled to judgment as a matter of law. The Trustee later filed his own motion for summary judgment asserting he is entitled to judgment as a matter of law.[1]

---

1. I initially intended to issue an opinion shortly after the hearing on Vaca's motion for summary judgment. However, at that hearing, Mr. Morrell on behalf of the Trustee made it clear that accountants had been engaged to study the debtors' records so as to compile evidence relevant to preference issues such as insolvency, commingling of funds, and so on. He indicated that

This may well be called a bellwether issue in this case, though the casual reader should not thereby conclude that I am so naive as to believe that, in a bankruptcy briarpatch such as this, any single squabble could be plucked out and identified as illustrative of fifty-seven other issues among the brambles.

Vaca, in 1989, conveyed real estate to San Diego Realty Exchange, Inc. ("SDRE"), so as to realize the tax benefits of transactions under 26 U.S.C. § 1031, sometimes known as "Starker" exchanges. Vaca was presumably lured by the siren song of SDRE into believing that simplicity and security would be achieved for a small fee, while savings on taxes would be safe and substantial. Little did Vaca know that the sign on SDRE's door read "SCAM" rather than "SAFETY". Vaca surely knows better now.

I intend to publish this opinion on what is an arcane bankruptcy dispute not just to fatten another volume of Federal Supplement or Federal Rules Decisions. Surely the jurisprudence of neither Rule 56 nor Section 1031 will be substantially advanced thereby. Nor do I do so for pride of authorship. Rather I publish to note that district judges—the foot soldiers who nowadays daily slog through the trenches in the war on drugs—occasionally gain a reprieve when a legal matter crops up that is a) not a drug case; and b) provides an intellectual challenge and thus serves to relieve the monotony.

## II. BACKGROUND

In this adversary proceeding, the Trustee seeks to recover, under 11 U.S.C. § 547, a parcel of real property known as the Lawson Valley Road property or an amount equal to its value. SDRE conveyed the Lawson Valley Road property to Vaca during the preference period. The transfer was made in connection with an arrangement that has been described, by Vaca, as

an "accommodator transaction", and by the Trustee, as part of a "Ponzi scheme".

SDRE operated a tax-deferred exchange business acting as an accommodator for purposes of Section 1031 tax-deferred real property exchanges. Typically, an SDRE client would convey real property to SDRE; SDRE would then convey the property to another exchange client and retain the proceeds of the sale, supposedly to purchase replacement property thereafter for the original selling client to complete the Section 1031 exchange. These transactions were governed by "Real Property Exchange Agreements" executed between SDRE and each of its clients. Vaca entered into such an Exchange Agreement with SDRE on October 23, 1989.

In the course of this arrangement, Vaca transferred two parcels of real property to SDRE in late October and early November, 1989. SDRE did not retain title, however. It immediately transferred title to the purchasers of the parcels.

SDRE received the proceeds of these transfers—approximately $36,295 on November 2 and approximately $141,530 on November 13—and held the proceeds, supposedly to purchase parcels of real property to complete Vaca's Section 1031 exchanges. SDRE recorded credits in Vaca's name in the amount of the net proceeds, less a fee of $750. However, SDRE did not establish or maintain a separate bank account for Vaca's money; it only kept ledger records of the amounts credited to Vaca.

The proceeds SDRE received in typical transactions were actually commingled in several general bank accounts together with the proceeds of other clients' transactions. SDRE deposited the proceeds of the Vaca transactions into one of its general accounts known as the Smith Barney account. SDRE's other general accounts included a checking account known as the Union Bank account. Both the Smith Barney and Union Bank accounts included commingled proceeds from various transac-

he intended to file a motion for summary judgment for the Trustee based on that evidence. Since the issues presented appeared to be central to many of the related adversary proceed-

ings, I delayed ruling to allow thorough briefing and argument on both parties' motions for summary judgment, as well as to allow amicus briefs. (See FN 2).

tions as well as income from transaction fees SDRE charged its clients.

To complete his tax-deferred exchanges, Vaca designated two parcels of real property for SDRE to purchase. The sellers conveyed title to SDRE and SDRE immediately transferred it to Vaca as described above. The first transfer occurred in January, 1990 (being before the preference period, it is not involved here.) The second, involving the Lawson Valley Road property, occurred in April, 1990 within 90 days of the involuntary bankruptcy petition which was filed on May 4, 1990.

On April 18, 1990, SDRE used approximately $84,894 from the Union Bank account to purchase a cashier's check. This sum equalled the amount of Vaca's remaining credit on SDRE's ledger records. SDRE delivered the cashier's check to Founder's Title to purchase the Lawson Valley Road property.

## III. STANDARDS

### A. Voidable Transfer

The trustee in bankruptcy may avoid certain transfers by a debtor made within the 90 days preceding the filing of the petition in bankruptcy. 11 U.S.C. § 547(b). To establish a voidable transfer, the trustee must prove each of seven conditions:

(1) a transfer;

(2) of the debtor's property;

(3) to or for the benefit of a creditor;

(4) for or on account of an antecedent debt;

(5) made while the debtor was insolvent;

(6) within 90 days preceding the filing of the petition in bankruptcy;

(7) that enables the creditor to receive more than would have been received under a Chapter 7 liquidation. 11 U.S.C. § 547(b);

*In re R & T Roofing Structures & Commercial Framing, Inc.,* 887 F.2d 981, 984 (9th Cir.1989).

### B. Summary Judgment

 The court should grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party must show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the moving party meets its burden, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Id.* at 322–23, 106 S.Ct. at 2552–53.

## IV. APPLICATION OF STANDARDS

Both sides argue strenuously that there are no factual issues to be resolved in this controversy and that it is ripe for summary judgment.[2] Although the pending motions were filed at different times and briefed and argued somewhat independently, I find it useful to treat them as cross-motions for summary judgment, and to consider all the extrinsic evidence offered to support and oppose each party's motion as evidence with respect to both motions.

I agree with the parties that there is no *factual* dispute as to any of the elements the Trustee must prove to establish a voidable transfer. The parties agree that the transfer of the Lawson Valley Road property to Vaca took place within the preference period. They agree the transfer was on account of antecedent debt created by the two earlier transfers of real property by Vaca to SDRE. Obviously, the antecedent debt created by the earlier transfers placed Vaca in the position of a creditor of SDRE so that the Lawson Valley Road

**2.** Vaca's motion was originally filed as a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P. However, I have considered the extrinsic evidence offered by both sides and treat the motion as one under Rule 56 for summary judgment as provided in Rule 12(b). *Bonilla v. Oakland Scavenger Co.,* 697 F.2d 1297, 1301 (9th Cir.1982), *cert. denied,* 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 838 (1984).

Numerous preference defendants in related adversary proceedings involving similar issues have jointly filed a brief as *amicus curiae.* They contend that Vaca's motion for summary judgment is not ripe for decision, that the evidence submitted is insufficient, and that the legal briefing provided by the parties is inadequate. I reject these contentions.

transfer was "to or for the benefit of a creditor". 11 U.S.C. § 547(b). The undisputed statement and supporting exhibits of Mr. O'Bryan[3] establish to my satisfaction that SDRE was insolvent at the time of the transfer and that the transfer enabled Vaca to recover more of the antecedent debt than he would have under a Chapter 7 liquidation.

This case turns on a legal determination regarding the second element required to establish a voidable transfer, i.e. Vaca claims the Lawson Valley Road property was never the property of the debtor. Vaca asks me to apply California trust law to hold that SDRE momentarily held legal title, but never had an equitable interest in the property—SDRE merely held the property in an implied resulting trust for the benefit of Vaca. The Trustee asks me to apply bankruptcy principles set forth in *In re Bullion Reserve of North America*, 836 F.2d 1214, 1217 (9th Cir.), *cert. denied*, 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988) to hold that the Lawson Valley Road property was property of the debtor's estate.

### A. The "Resulting Trust" analysis

■ Property held in trust by the debtor at the time of the filing of the petition in bankruptcy is excluded from the bankruptcy estate. *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 2314 n. 10, 76 L.Ed.2d 515 (1983); *In re B.I. Financial Services Group, Inc.*, 854 F.2d 351, 354 (9th Cir.1988). Thus, property held in trust by the debtor is not subject to avoidance under Section 547(d). *In re R & T Roofing Structures*, 887 F.2d at 985.

■ The party alleging that property is held in trust, Vaca in this case, has the burden of showing the trust relationship. *In re B.I. Financial Services Group, Inc.*, 854 F.2d at 354. Whether a trust has been created is generally determined under state law. *Id.* I agree with Vaca that Califor-

nia, the state in which the Lawson Valley Road property exists, provides the governing law. *Matter of Torrez*, 63 B.R. 751, 754 (9th Cir. BAP 1986), *aff'd*, 827 F.2d 1299 (9th Cir.1987).

■ Under California law, a resulting trust arises in favor of the party who pays the purchase price for a parcel of land and places the title to that land in the name of another person. Cal.Civ.Code § 853; *Martin v. Kehl*, 145 Cal.App.3d 228, 239, 193 Cal.Rptr. 312 (1983); *Matter of Torrez*, 63 B.R. at 754. The resulting trust arises to enforce the inferred intent of the parties that the apparent purchaser should acquire and hold the property for the party with whose means the property was acquired. *Lloyds Bank California v. Wells Fargo Bank*, 187 Cal.App.3d 1038, 1042–43, 232 Cal.Rptr. 339 (1986); *Martin v. Kehl*, 145 Cal.App.3d at 238, 193 Cal.Rptr. 312; *Lezinsky v. Mason Malt Whisky Distilling Co.*, 185 Cal. 240, 251, 196 P. 884, *cert. denied*, 257 U.S. 637, 42 S.Ct. 49, 66 L.Ed. 409 (1921).

Vaca has presented substantial evidence to bolster the presumption that the parties intended for SDRE to merely acquire and hold the Lawson Valley Road property in trust. The Exchange Agreement required SDRE to play an extremely limited role in the acquisition of the property and imposed ultimate liability associated with the acquisition on Vaca.

However, Vaca's proof fails utterly on one crucial point. As shown by the authorities cited above, a resulting trust can arise only in favor of the party who actually provides the means for the acquisition of real property. The purchase price paid for the Lawson Valley Road property came from bank accounts in which were commingled funds belonging to various clients of SDRE. Any resulting trust in this case, would have to arise for the benefit of all SDRE clients who contributed to the commingled fund.

3. Vaca objected to Mr. O'Bryan's declaration for lack of foundation but has not offered contradictory evidence. I note that Vaca has not engaged his own accountant to review available financial information in order to draw contra-

dictory conclusions. Mr. O'Bryan's declaration is based on 1700 hours of reviewing financial information regarding SDRE and related entities. I overrule Vaca's objections.

The party who claims a resulting trust in land must establish clearly, convincingly, and unambiguously the precise amount or proportion of the consideration paid by that party. *Lloyds Bank California*, 187 Cal.App.3d at 1044–45, 232 Cal. Rptr. 339. If the claimant fails to do so, a resulting trust will not be declared. *Id.* at 1045, 232 Cal.Rptr. 339. Here the evidence shows only that monies attributable to Vaca were commingled in the Smith Barney account and that, thereafter, the Lawson Valley Road property was purchased with monies attributable to a number of other SDRE clients commingled in the Union Bank account. Vaca's declaration that SDRE kept an account in its records of the funds attributable to him is not sufficient to establish clearly and unambiguously that Vaca's funds contributed at all to the purchase price of the Lawson Valley Road property. *Lloyds Bank California*, at 1044–45, 232 Cal.Rptr. 339. Accordingly, Vaca has not carried out his burden under the resulting trust analysis or under summary judgment standards.

I am satisfied that Vaca has not carried his burden as the moving party under Rule 56, Fed.R.Civ.P. *Celotex Corp. v. Catrett*, 477 U.S. at 323, 106 S.Ct. at 2552. Accordingly, I deny his motion for summary judgment.

## B. The *"Bullion"* analysis

Property that belongs to the debtor for purposes of Section 547 is broadly defined to include property whose transfer would deprive the estate of something which could otherwise be used to satisfy the claims of creditors. *In re Bullion Reserve of North America*, 836 F.2d 1214, 1217 (9th Cir.), *cert. denied*, 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988). Money from bank accounts under the debtor's control and containing the commingled assets of various creditors presumptively constitutes property of the debtor's estate. *In re Bullion* at 1217. The presumption may be overcome in a variety of ways, including a sufficient showing that a constructive trust was created. *Id.* at 1217 n. 3. However, as shown above, Vaca has

failed to establish the existence of a constructive trust.

Vaca has vigorously argued what he calls "dramatic" factual differences between the *Bullion* case and the present case. However, I find no principled basis for distinguishing *Bullion*. It is clear that SDRE commingled proceeds it received from unrelated transactions involving various clients and deposited those monies in its own general bank accounts. These funds were further commingled with SDRE income earned from "transaction fees" it charged to perform its "accommodator" function. It is also clear that at no time did SDRE maintain a sufficient balance in these general accounts to cover the contributions of all its clients. It was necessary to use later acquired funds received as proceeds from newer clients to purchase parcels designated by previous investors, such as Vaca, to complete their Section 1031 exchanges. This characteristic is the hallmark of a so-called "Ponzi scheme". *In re Bullion Reserve*, 836 F.2d at 1219 n. 8; *See In re Independent Clearing House Co.*, 41 B.R. 985, 994 n. 12 (Bankr.D.Utah 1984) (Describing and summarizing the history of Ponzi schemes), *aff'd in part, rev'd in part on other grounds*, 62 B.R. 118 (D.Utah 1986). In that respect, this case is basically indistinguishable from *In re Bullion*. Therefore, I rule in accordance with *Bullion* that the funds used to purchase the Lawson Valley Road property were property of the debtor.

Vaca's counsel argues that this result would be inequitable. I find, to the contrary, that this result furthers the primary policy of the bankruptcy laws—equitable distribution among similarly situated creditors. Vaca and his fellow SDRE clients attempted to create the "fiction" that they were making simultaneous real property exchanges with SDRE for favorable treatment under the tax laws. In doing so, they signed title over to SDRE and contributed monies to a single commingled fund. Each contributor thereby assumed the position of an unsecured creditor of SDRE. Vaca now asserts a different contradictory fiction, i.e. that there really was no transfer

of real property to SDRE.[4] It would be contrary to the equitable distribution principle of Section 547 to allow Vaca a purely fortuitous advantage because of the timing of his transaction while leaving fellow SDRE clients with lesser shares of SDRE's remaining assets.

I am satisfied that the Trustee has carried his burden of showing there are no genuine issues of fact and that he is entitled to judgment as a matter of law. Accordingly, the Trustee's motion for summary judgment is granted. *Celotex Corp. v. Catrett*, 477 U.S. at 323, 106 S.Ct. at 2552.

## V. CONCLUSION

Based on the foregoing, defendant Vaca's motion for summary judgment is DENIED. The Trustee's motion for summary judgment is GRANTED.[5]

---

4. Vaca's fervent insistence that the papers transferring title to SDRE are not really what they say they are calls to mind an old story. In this story, Abraham Lincoln is said to have inquired of another as to the number of legs on a sheep. That person replied, "Four." Lincoln then asked, "And what if you call its tail a leg?" The response was, "Five." "No," said Lincoln, "calling a tail a leg does not make it a leg."

5. The parties are requested to prepare proposed forms of final judgment in compliance with

Rule 54(b), Fed.R.Civ.P. I intend to direct entry of final judgment in accordance with that rule to facilitate speedy appeal of the issue presented here. In addition, pursuant to our colloquy at the hearing on July 29, 1991, I invite and encourage the parties to consider making a request for an appropriate order under 28 U.S.C. § 1292(b), to the extent that section is applicable, so as to commence the procedure for taking interlocutory appeal.