24 F.3d 249
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 In re SAN DIEGO REALTY EXCHANGE, INC., Debtor.
Harold S. TAXEL, Trustee, Plaintiff-Appellee,
v.
Jack SURNOW, Defendant-Appellant.
 No. 92-56526.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 5, 1994.
Decided May 2, 1994.
 
 Before: HALL, LEAVY, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Jack Surnow appeals a summary judgment in favor of Harold Taxel, trustee for chapter 7 debtor San Diego Realty Exchange, Inc. Senior District Judge Burns, sitting by designation on the bankruptcy court, held that Surnow had received a preferential transfer in violation of 11 U.S.C. Sec. 547(b). We exercise jurisdiction over the appeal and reverse.
 
 I.
 
 3
 In the late 1980s, San Diego Realty Exchange, Inc. ("SDRE") facilitated "Starker exchanges," real estate transactions eligible for tax benefits under 26 U.S.C. Sec. 1031. Generally, SDRE acquired "exchange property" from a client, transferred title to a third party, and used the proceeds to purchase "replacement property" for the client. Seeking to consummate such a deal, Jack Surnow executed an "Exchange Agreement" with SDRE in 1989. Pursuant to the agreement, Surnow transferred an exchange property to SDRE, which then sold the parcel to a third party for $353,082.11 (plus $2,150.70 from the escrow). At Surnow's insistence, SDRE placed the sale funds in a segregated account at Michigan National Bank ("MNB") and made Surnow's son, Michael, a required signatory for all withdrawals.
 
 
 4
 Surnow was unable to locate suitable replacement property, however, and the Exchange Agreement ultimately expired without a completed Starker exchange. Surnow, therefore, demanded that SDRE authorize MNB to release the funds to him. As a result, SDRE procured Michael Surnow's signature and closed the account on January 31, 1990. Surnow, however, permitted SDRE to wire transfer the money to its general, commingled account at Chemical Bank in order to collect a $500 transaction fee. It was not until thirteen days later, on February 13, 1990, that SDRE wired $370,932.45 (the sale proceeds plus interest less the transaction fee) to Surnow from a second commingled account at Union Bank.
 
 
 5
 On May 4, 1990, less than ninety days later, SDRE's creditors filed an involuntary petition under chapter 7 of the Bankruptcy Code. Harold Taxel, SDRE's appointed trustee, subsequently commenced an adversary proceeding against Surnow to recover the $370,932.45 as a preferential transfer. Senior District Judge Burns, sitting by designation on the bankruptcy court, granted summary judgment for Taxel and Surnow appealed directly to the Ninth Circuit.
 
 II.
 
 6
 Although neither party raised the issue, we must first examine whether we have jurisdiction over Surnow's appeal. E.g., United States v. Stone (In re Stone), 6 F.3d 581, 583 n. 1 (9th Cir.1993) (court of appeals has an independent obligation to determine jurisdiction). Despite the unusual procedural nature of the case, we conclude that appellate review in this court is appropriate.
 
 
 7
 Normally, of course, parties must appeal bankruptcy court orders either to the district court or the bankruptcy appellate panel in the first instance. See 28 U.S.C. Sec. 158(a), (b). As a result, courts of appeals lack jurisdiction over the direct appeal of any order entered by a bankruptcy judge. E.g., SEC v. Danning (In re Carter), 759 F.2d 763, 764-66 (9th Cir.1985); 28 U.S.C. Sec. 158(d).
 
 
 8
 In this case, however, Surnow seeks to appeal an order entered by a district judge sitting by designation on the bankruptcy court. This fact requires us to exercise jurisdiction: "It does not make sense to have appeals from a decision of an Article III judge heard by a panel of Article I judges, or by another judge of that judge's district court. We accordingly hold that we will treat an appeal from the decision of a district court judge sitting as a bankruptcy court as an appeal from a final decision appealable under 28 U.S.C. Sec. 1291." Klenske v. Goo (In re Manoa Fin. Co.), 781 F.2d 1370, 1372 (9th Cir.1986), cert. denied, 479 U.S. 1064 (1987). Accord Ryan v. Loui (In re Corey), 892 F.2d 829, 833 n. 1 (9th Cir.1989), cert. denied, 498 U.S. 815 (1990); Graulty v. Bank of Hawaii (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.), 856 F.2d 78, 79 (9th Cir.1988); Harris v. McCauley (In re McCauley), 814 F.2d 1350, 1351 (9th Cir.1987); Cannon v. Hawaii Corp. (In re Hawaii Corp.) 796 F.2d 1139, 1141 (9th Cir.1986). Therefore, because Judge Burns' order is final, see, e.g., Hansen v. MacDonald Meat Co. (In re Kemp Pac. Fisheries, Inc.), 16 F.3d 313, 315 (9th Cir.1994) (reviewing grant of summary judgment on preference claim), we may decide this appeal.[1]
 
 III.
 
 9
 A bankruptcy trustee may recover property for the benefit of the debtor's estate if: (1) there was a transfer, (2) of property of the debtor, (3) to or for the benefit of a creditor, (4) for or on account an antecedent debt, (5) made while the debtor was insolvent, (6) made on or within ninety days before the date of the bankruptcy petition, (7) that enables the creditor to receive more than it would receive in a chapter 7 liquidation of the estate. E.g., Kemp Pac. Fisheries, 16 F.3d at 315 n. 1; 11 U.S.C. Sec. 547(b).
 
 
 10
 In the bankruptcy court, Surnow argued that SDRE had held the sale proceeds in trust for him, thereby excluding the funds from property of the estate. The court, however, declined to decide that issue, holding that summary judgment was appropriate because, even if SDRE had held the money in trust, Surnow was unable to trace the funds beyond the commingled general accounts: "Even under this assumption [that a trust existed], Surnow would fail to raise an issue of material fact because of the subsequent commingling of the supposed trust funds with the funds of other creditors. This commingling is entirely undisputed. Surnow simply cannot trace the supposed corpus of the trust." Viewing the evidence in the light most favorable to Surnow, as we must when reviewing a grant of summary judgment, see, e.g., id. at 315, we cannot agree that no genuine issues of material fact exist.
 
 
 11
 "Property that the debtor holds in trust at the time the debtor files its bankruptcy petition is excluded from the bankruptcy estate and thus is not property of the debtor for purposes of section 547." Kupetz v. United States (In re California Trade Technical Sch., Inc.), 923 F.2d 641, 646 (9th Cir.1991). See United States v. Whiting Pools, Inc., 462 U.S. 198, 205 n. 10 (1983); Mitsui Mfrs. Bank v. Unicom Computer Corp. (In re Unicom Computer Corp.), 13 F.3d 321, 324 (9th Cir.1994); 11 U.S.C. Sec. 541(b)(1). However, "[w]hen property of the estate is alleged to be held in trust, the claimant has the burden of establishing the original trust relationship. A claimant must prove its title, identify the trust property, and where the property has been mingled with that of the debtor, the claimant must adequately trace the property." Altura Partnership v. Breninc, Inc. (In re B.I. Fin. Servs. Group), 854 F.2d 351, 354 (9th Cir.1988) (emphasis added).
 
 
 12
 Here, Taxel submitted the declaration of J. Duross O'Bryan, a certified public accountant, who stated that it was impossible to trace Surnow's money once SDRE deposited the funds into its general account. Surnow, however, produced SDRE's Union Bank and Smith Barney account statements. Analyzing these statements under the first-in, first-out ("FIFO") rule set forth in California Trade Technical, 923 F.2d at 649-50, we think it likely that at least some of Surnow's alleged trust funds are in fact traceable through the commingled accounts.
 
 
 13
 In brief,[2] it appears that on January 31, 1990 SDRE wired Surnow's $370,410 to the Smith Barney account, which contained $1,510,695 ("pre-Surnow funds") prior to the transfer.[3] Between January 31 and February 12, SDRE withdrew a total of $1,068,900 from the account,[4] leaving intact $441,795 of the pre-Surnow funds. On February 12, SDRE wired $1,181,800 from the Smith Barney account to the Union Bank account. Under the FIFO rule, that transfer consisted of the $441,795 pre-Surnow funds, Surnow's $370,410, and $369,595 in subsequently deposited funds.
 
 
 14
 The Union Bank account had a balance of (-$140,998) prior to the transfer.[5] After the transfer but before SDRE finally wired the money to Surnow, SDRE made an additional $610,867 withdrawal. Again applying the FIFO rule, $60,340 of Surnow's original $370,410 appears to remain intact and traceable.[6] If so, then Surnow is not liable for that amount as a preference. See Republic Supply Co. v. Richfield Oil Co., 79 F.2d 375, 377 (9th Cir.1935) ("[N]o change of form can divest a trust fund of its trust character, ... the cestui may follow and reclaim his funds so long as he is able to trace and identify them, not as his original dollars or necessarily as any dollars, but through and into any form into which his dollars may have been converted.").
 
 
 15
 The fact that SDRE was insolvent throughout the preference period is of no consequence to Surnow's ability to trace the alleged trust funds. The possibility that Surnow had created an express trust distinguishes this case from Judge Burns' earlier ruling in the SDRE bankruptcy, see Taxel v. Vaca (In re San Diego Realty Exch., Inc.), 132 B.R. 424 (Bankr.S.D.Cal.1991), and from the Ponzi scheme described in Danning v. Bozek (In re Bullion Reserve), 836 F.2d 1214 (9th Cir.), cert. denied, 486 U.S. 1056 (1988).
 
 
 16
 We therefore reverse and remand in order for the bankruptcy court to determine whether Surnow had in fact created an express trust and, if so, whether he is able to trace the trust funds by applying the FIFO rule. Cf. Elliot v. Bumb, 356 F.2d 749, 755 (9th Cir.) ("The cause is remanded so as to afford [Surnow] the opportunity to attempt to trace the sources of the commingled funds."), cert. denied, 385 U.S. 829 (1966).
 
 
 17
 REVERSED and REMANDED.
 
 
 
 *
 The panel unanimously finds this case appropriate for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Although Surnow indicated in his timely notice of appeal from Judge Burns' order that he was invoking jurisdiction of the Ninth Circuit, the clerk of the bankruptcy court referred his appeal to a bankruptcy appellate panel. After Surnow objected, District Judge Gilliam entered an order "terminating" the case, thereby permitting a direct appeal to the circuit. Surnow then filed a second, untimely appeal of Judge Gilliam's order
 Surnow's original notice of appeal was jurisdictionally proper and timely; Judge Gilliam's order was unnecessary. As a result, Surnow's second, untimely appeal is of no consequence. We review this case on the basis of the first notice of appeal.
 
 
 [2]
 The following calculations are estimates. The record does not reveal whether the bank statements are complete and accurate representations of SDRE's financial accounts and, in any event, the statements themselves are not entirely legible. We undertake this analysis merely to demonstrate how tracing might be possible. On remand, it will be Surnow's burden to trace the funds to the satisfaction of the court
 
 
 [3]
 The opening account balance on January 31 was $1,368,385. Prior to depositing Surnow's funds later that day, SDRE posted two credits totalling $142,310
 
 
 [4]
 SDRE posted four debits during that period: $190,000; $300,000; $500,000; and $78,900
 
 
 [5]
 The opening balance at the first of the month was $401,679. During the next twelve days, SDRE posted four credits totaling $1,068,900 ($190,000; $300,000; $500,000; and $78,900) and eleven debits totalling $1,611,577 ($5,000; $436,858; $100,000; $22,928; $167,650; $4,400; $76,063; $76,576; $134,781; $94,450; $492,871)
 
 
 [6]
 Deducting the $140,998 debit balance from the total of $441,795 pre-Surnow funds leaves $300,797 in pre-Surnow funds. Deducting the subsequent $610,867 debit from the remaining pre-Surnow funds leaves a shortfall of $310,070. Deducting that shortfall from Surnow's funds leaves $60,340